**UNIFIED SCHOOL DISTRICT NO. 501, SHAWNEE COUNTY, STATE OF KANSAS, Plaintiff,**

v.

**CONTINENTAL CASUALTY COMPANY, Defendant.**

Civ. A. No. 85–4042–S.

United States District Court, D. Kansas.

March 23, 1989.

Charles N. Henson, Eidson, Lewis, Porter & Haynes, Topeka, Kan., for plaintiff.

Richard T. Merker, Wallace, Saunders, Austin, Brown, & Enochs, Chtd., Overland Park, Kan., Mike Tone, Anne Fiedler, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on motions of both parties for summary judgment. In this action, plaintiff seeks declaratory relief. The general issue in this case is whether an exclusion provision of a liability insurance policy prevents plaintiff's recovery of expenses incurred in defending the school desegregation case of *Brown v. Topeka Bd. of Educ.*, 671 F.Supp. 1290 (D.Kan.1987) (*"Brown III"*). The parties are in agreement on the underlying facts in this case. Therefore, the court is prepared to enter a declaratory judgment on this matter.

### A. *Undisputed Facts*

1. Defendant, Continental Casualty Company, issued an insurance policy (Policy No. BEL 318 10 47) to plaintiff, Unified School District No. 501, ("school district"), with an effective policy period from October 15, 1976 to October 15, 1979. This insurance policy was renewed and continued in effect from October 15, 1979 to October 18, 1984, when defendant canceled the policy.

2. The insurance policy is a "reimbursement policy." Continental agreed to reimburse the school district for all covered losses.

3. Pursuant to section I(a) of the policy, Continental agreed with the school district that if a claim was brought against the school district for a "wrongful act" occurring during the policy period, then Continental would pay the school district for "all loss which the [school district] shall become legally obligated to pay." A wrongful act is defined in section III(c) to include, among other things, any "act or omission or neglect or breach of duty." Loss is defined in section III(d) to include any amount that the school district is "legally obligated to pay", including, among other things, damages, judgments and "cost of investigation and defense of legal actions."

4. The policy at issue also contained, in all capital letters, the following Endorsement No. 3:

COVERAGE SHALL EXCLUDE ANY LOSS ARISING OUT OF PRIOR OR OUTSTANDING LITIGATION OR ACTS WHICH GIVE RISE THERETO.

5. The *Brown* school desegregation litigation was commenced in this court in February of 1951. The case later proceeded to the United States Supreme Court. The Supreme Court entered its first ruling in *Brown* on May 17, 1954, holding that the Topeka Board of Education's maintenance of racially segregated elementary schools violated the equal protection clause of the Fourteenth Amendment of the Constitution. *Brown v. Board of Educ. of Topeka,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) (*Brown I*).

6. In *Brown II,* the Supreme Court's second ruling issued May 31, 1955, the Court ordered that the *Brown* plaintiffs be admitted to public schools on a racially nondiscriminatory basis with "all deliberate speed." The Court remanded the case to this court, with directions to "require that the defendants make a prompt and reasonable start toward full compliance with our May 17, 1954 ruling." The Supreme Court further directed the district court to retain jurisdiction during the period of desegregation. *Brown v. The Board of Educ.,* 349 U.S. 294, 300, 75 S.Ct. 753, 756, 99 L.Ed. 1083 (1955).

7. On August 24, 1955, a hearing was held in this court on whether the Board of Education had fully complied with the Supreme Court's Order. *See Brown v. Board of Educ. of Topeka,* 139 F.Supp. 468, 469 (D.Kan.1955). The court concluded that complete desegregation had not been accomplished, but that the school district was making good-faith efforts toward the accomplishment of desegregation. The court specifically stated, however, that "[j]urisdiction of the cause for the purpose of entering the final decree is retained until such time as the court feels there has been full compliance with the mandate of the Supreme Court .." *Id.* at 470.

8. On August 22, 1979, certain claims were made against the school district. These claims were made by eight black parents and their children, who requested leave to intervene as plaintiffs in the *Brown v. The Board of Educ.* case.

9. The insurance policy at issue was in effect at the time of the filing of the intervenors' pleadings.

10. In their pleadings, the intervening plaintiffs claimed that the school district operated racially-segregated schools, established school attendance zones that perpetrated racially-segregated schools, adopted and implemented an open enrollment policy that perpetrated racially-segregated schools, adopted and implemented facility plans that perpetrated segregated schools, provided facilities, equipment and curriculum to schools with high black enrollment that were substantially inferior to those provided to schools with a disproportionately high white enrollment, and assigned black teachers and personnel to schools with high black enrollment and assigned white teachers and personnel to schools with high white enrollment.

11. On November 29, 1979, Judge Rogers granted the intervening plaintiffs' motion to intervene. *Brown v. Board of Educ. of Topeka,* 84 F.R.D. 383, 405 (D.Kan.1979).

12. The school district notified Continental of the claims made against it by the intervening plaintiffs by letter dated December 6, 1979.

13. Following this notice, Continental notified the school district on May 16, 1980, that it denied any liability in connection with these claims and denied that the policy afforded any coverage to the school district in connection with these claims. Continental based its denial on Endorsement No. 2 and Endorsement No. 3 of the policy.

14. The intervenors' claim was tried to this court in October of 1986. Post-trial briefs were filed. On April 8, 1987, this court denied the intervenors' claim for relief. The court found that the school district had eliminated all vestiges of de jure segregation. The court further found that the school district had a unitary system of education.

15. On August 16, 1979, a class action suit was filed by Carla Michelle Miller against the school district, alleging that the school district denied plaintiffs a nonsegregated public education. *Miller v. Board of Educ. of Topeka,* No. 79–1408, (D.Kan.).

16. On September 7, 1979, a class action suit was filed by Gregory Grant Chapman against the school district, alleging that plaintiffs were denied equal protection of the laws by virtue of the school district's conduct. *Chapman v. Board of Educ. of Topeka,* No. 79–1478 (D.Kan.).

17. The plaintiffs in *Chapman* and *Miller* were alleging essentially the same claims as the intervening plaintiffs in *Brown III.* The claims were essentially that the school district was operating a racially-segregated school system, based on the district's open enrollment policy, school-closing decisions, and school attendance zones adopted by the district. Continental reimbursed plaintiff for its defense costs in both the *Miller* and *Chapman* actions, without reference to the exclusions found in Endorsement No. 2 or Endorsement No. 3.

## B. *Legal Analysis & Conclusion*

■ Under Kansas law if an insurance policy is clear and unambiguous, the words are taken and understood in their plain, ordinary and popular sense. *American Media, Inc. v. Home Indemnity Co.,* 232

Kan. 737, 740, 658 P.2d 1015, 1018 (1983) (quoting *Mah v. United States Fire Ins. Co.,* 218 Kan. 583, 586–87, 545 P.2d 366, 369 (1976)). Also, a court should not attempt to construe the plain language of a policy provision into distorted, ambiguous language. *See Canal Ins. Co. v. Earnshaw,* 629 F.Supp. 114, 118 (D.Kan.1985) ("The court will not torture words to import ambiguity when ordinary meaning leaves no room for such.").

■ In the present case, the loss that the school district claims is covered by the policy is the legal expenses incurred in defending the action brought by the intervening plaintiffs in the *Brown III* litigation. The specific issue for resolution in this case is whether this loss is excluded from coverage by Endorsement No. 3 of the policy. This endorsement states:

COVERAGE SHALL EXCLUDE ANY LOSS ARISING OUT OF ... OUTSTANDING LITIGATION OR ACTS WHICH GAVE RISE THERETO.

The court has previously recognized that the *Brown III* case arose out of the ongoing *Brown* school desegregation litigation. *See Brown v. The Topeka Board of Educ.,* 671 F.Supp. 1290, 1292 (D.Kan.1987) ("This case [*Brown v. The Topeka Board of Educ.*] remained inactive until 1979 when a new group of parents with school children in Topeka's public schools were permitted to intervene. The new plaintiffs charge that the mandate to desegregate Topeka's schools has never been completed."). The intervening plaintiffs' case was simply a continuation of the *Brown* case. In fact, the intervening plaintiffs' case ultimately determined whether Topeka had finally complied with the original mandate resulting from the earlier litigation in this case. The intervening plaintiffs' case ended the ongoing *Brown* litigation. *See Brown v. The Topeka Board of Educ.,* 671 F.Supp. at 1311 ("This case has reached an appropriate denouement. The district has a unitary system of education.") (footnote omitted). Therefore, the court finds that the intervening plaintiffs' case (*Brown III*) was definitely related to the ongoing litigation in *Brown.*

Under the present factual situation, the terms "arising out of" and "outstanding litigation" are not ambiguous. The *Brown* case was clearly outstanding litigation and the intervenors' case clearly was one arising out of that outstanding litigation in *Brown.* Clearly, the intervening plaintiffs, in their case, were seeking a determination of whether the school district was in compliance with the order mandated in the earlier phases of the *Brown* litigation as that order had been interpreted by later Supreme Court decisions. Therefore, the intervening plaintiffs' claims arose out of the enforcement of the order issued in the earlier phases of the *Brown* litigation.

Since the intervening plaintiffs' case arose out of and was related to the ongoing *Brown* litigation, plaintiffs are not entitled to recover the expenses incurred in defending that litigation from Continental. The court finds that in the present situation, the endorsement's language is plain and unambiguous. The clear meaning of the language under Endorsement No. 3 prohibits the recovery of this loss. The court has no difficulty in reading the endorsement to exclude the coverage claimed by the school district. The court will not engage in any effort to distort the clear meaning of this endorsement as applied to the facts of this case. Thus, Continental Casualty Company's motion for summary judgment will be granted.

Since the terms of the exclusion contained in Endorsement No. 3 are clear and unambiguous, the court has no need to apply rules of construction normally applied to ambiguous insurance language policy. Therefore, Continental's previous conduct in regard to the *Miller v. Board of Educ.* litigation and the *Chapman v. The Board of Educ.* litigation is irrelevant to the resolution of the present case. Also, the court need not reach the issue of issue preclusion (collateral estoppel). The court bases its decision solely on the clear and unambiguous terms of the insurance policy.

IT IS BY THE COURT THEREFORE ORDERED that defendant's motion for summary judgment is granted. IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is denied.