**Ann DAVIDSON, Samuel Davidson, a minor, Myles Davidson, a minor, and Hadley Davidson, a minor, by their natural guardian and next friend, Ann Davidson, Plaintiffs,**

v.

**ST. FRANCIS REGIONAL MEDICAL CENTER EMPLOYEE GROUP HEALTH PLAN, Defendant.**

Civ. A. No. 88–2528–S.

United States District Court, D. Kansas.

June 9, 1989.

William V. North, Anthony F. Rupp, Shughart, Thomson & Kilroy, P.C., Overland Park, Kan., David C. Burns, Speir, Stroberg, Sizemore, Burns and Gillmore, P.A., Newton, Kan., for plaintiffs.

Michael W. Merriam, Goodell, Stratton, Edmonds & Palmer, Topeka, Kan., for defendant.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on the parties cross-motions for summary judgment and plaintiff's motion to strike from the record certain purported minutes of August 10, 1988. Plaintiffs brought this suit pursuant to Section 502(a)(1)(B) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B). Plaintiffs are beneficiaries of the defendant Plan and are appealing the denial of certain benefits sought from that plan.

The uncontroverted facts for purposes of these motions are as follows. At all times relevant to these proceedings, plaintiffs were beneficiaries of the defendant St. Francis Regional Medical Center Employee Group Health Plan ("Plan"), which is an "employee benefit plan" within the meaning of section 3(3) of ERISA, 29 U.S.C. § 1002(3). The Plan provides certain health care coverage for its beneficiaries. Plaintiff Ann Davidson ("Mrs. Davidson") was an employee of St. Francis Regional Medical Center. During the same time period, Mrs. Davidson's husband, Terry Davidson ("Mr. Davidson"), also carried an individual policy of health insurance for his family with Principal Mutual Insurance Company (PMIC). On June 22, 1987, Mrs. Davidson gave birth to triplets: plaintiffs Myles, Samuel and Hadley Davidson. She sought to recover from the Plan various

health care costs incurred as a result of the triplets' medical problems at birth. To date those costs have totaled nearly $300,000.00.

Most of those medical bills were paid by Mr. Davidson's carrier, PMIC. However, Mrs. Davidson also sought recovery of those costs from the Plan. After an administrative hearing, the trustees of the Plan determined that the intent of the Plan was not to provide "dual payments" and that Mrs. Davidson could not recover from the Plan. She properly appealed that decision to this court under 29 U.S.C. § 1132(a)(1)(B).

A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing the absence of a genuine issue of material fact. This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. *United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986). The court must also consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th

Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

█ The "coordination of benefits" clause in the Plan in question concededly did not apply to Davidson's PMIC policy. In other words, in the absence of some other provision in the Plan documents, the coordination of benefits clause did not provide that the Plan would not be liable for medical expenses paid by PMIC. The trustees of the Plan did not look to the "coordination of benefits" clause to prevent payment of duplicate benefits to Mrs. Davidson. Rather, they looked to another clause within the Plan document which provided as follows:

> Comprehensive Major Medical Benefits are not payable for any loss ... in connection with ... [s]ervices, supplies or treatment ... provided by any hospital or institution which does not require the individual to pay for such services in the absence of coverage.

The trustees of the Plan determined that this clause ("Exclusion Two") allowed the Plan to deny benefits when another carrier paid the expenses for which coverage was sought. They reasoned that the hospital did "not require the individual to pay for such services," because those services had already been covered by another carrier, and the Plan was therefore not liable. Plaintiffs dispute the trustees' interpretation of this clause.

█ In reviewing the trustees interpretation of ERISA plan language, a court must exercise independent judgment. The standard of review in such an appeal is de novo, unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, — U.S. —, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). The parties agree that the Plan in question does not give the administrator discretionary authority to determine eligibility or to construe the terms of the Plan. Thus, this court's standard of review is de novo.

The parties agree for purposes of this motion that if the Plan is to properly deny payment of duplicate benefits to Mrs.

Davidson, that denial will be pursuant to "Exclusion Two." The Plan contends that Exclusion Two allows it to deny benefits because Mrs. Davidson is not otherwise being required to pay for the services in question. She is not being required to pay for those services because her husband's carrier has already paid for them. Plaintiffs, on the other hand, contend that Exclusion Two does not allow the Plan to avoid duplicate payment of benefits. They argue that such an interpretation of that clause would render the separate "coordination of benefits" clause duplicative. They further cite to various cases interpreting similar language in traditional insurance policies. Those cases held that the language in question was intended to allow a carrier to avoid liability only when a hospital or institution would provide services free of charge. This would occur when, for instance, a member of the military service was entitled to free medical treatment. *See, e.g., Dorfman v. Aetna Life Ins. Co.,* 342 So.2d 91, 93 (Fla.Dist.Ct.App.1977); *Hollister v. Government Employees Ins. Co.,* 192 Neb. 687, 224 N.W.2d 164, 166 (1974). *See also* 1C Appleman, *Insurance Law & Practice* § 709, p. 536 (1st Ed.Rev. 1980) (Shortly after World War II, insurers commonly exempted themselves from payment for charges for which the insured was not "required to pay"; insurance companies wanted to avoid payment for expenses incurred in a veterans' facility.).

The court finds that Exclusion Two does not allow the Plan to avoid payment of duplicate benefits. The court has several reasons for that conclusion. First, if Exclusion Two were interpreted as the Plan urges, there would be no need for the separate "coordination of benefits" clause. If the Plan were never liable if another carrier provided coverage, then there would be no need for the Plan to set out specific types of coverage (as the Plan does in its "coordination of benefits" clause) which would first pay benefits and erase the Plan's liability. The court should not construe the Plan document in question so as to render meaningless some provisions in the document.

Secondly, the court is persuaded by the plain language of Exclusion Two. If the court were to adopt the Plan's interpretation of Exclusion Two, the clause "in the absence of coverage" would be meaningless. In essence, the Plan argues that Exclusion Two allows that the Plan does not have to pay if the hospital does not require the individual to pay when the Plan will not pay. Of course, there is no reason to state that the Plan is not required to pay when it is not required to pay. The Plan's interpretation of Exclusion Two defies logic, and is rejected by the court.

Additionally, the court is persuaded that if the Plan's interpretation of the language were taken to its extreme, it would defy the intent of the Plan. Exclusion Two does not specifically state that the Plan is not liable if another *insurance carrier* provides coverage. It would follow, then, that according to the Plan's interpretation of the Exclusion, it would not be liable if *anyone* else paid for the services rendered. Plaintiffs provide the example that if Mr. Davidson had paid for the expenses himself, the Plan's interpretation of Exclusion Two would not allow plaintiffs to recover for those payments from the Plan. This would, of course, be contrary to the Plan's apparent intent to provide benefits to all named beneficiaries. The court also notes that the Plan's interpretation of Exclusion Two is contrary to its express language. The exclusion applies when payment would not be required "in the absence of coverage." There was coverage in this instance—from a third-party carrier—and so the exclusion does not apply.

Finally, the court is persuaded by the traditional interpretation of such clauses in insurance policies. The court does recognize that the document in question is not an insurance policy. However, it is similar to one, and interpretation of the document under traditional insurance law is certainly consistent with the clause's plain language; *see supra.*

The court is not persuaded by the defendant's statement that the plaintiffs' proposed interpretation of the exclusion is adverse to the Plan's intent. Defendant

states that the intent of the Plan documents is to avoid duplicate payments, so as to provide the best coverage possible to beneficiaries at the lowest price possible. However, the only evidence of such intent provided by defendant is *ad hoc;* in considering plaintiffs' claim for benefits under the Plan, the trustees of the Plan discussed this purported intent behind the Plan. However, there is no basis for concluding that this was the intent of the Plan. Further, it would seem that if this were in fact the intent of the Plan, the Plan would have been written originally to coordinate benefits with all insurance policies, including Mr. Davidson's PMIC policy.

The court recognizes that the tremendous windfall provided to plaintiffs in this particular instance may seem unjust. However, the court is bound by the terms of the Plan in question; if the drafters of that Plan failed to provide adequate protection against duplicate payment of benefits, the court is not at liberty to protect the Plan from this oversight. The court has no choice but to grant plaintiffs' motion for summary judgment and to deny defendant's motion for summary judgment.

Plaintiffs also filed a motion to strike from the record certain purported minutes of a meeting of Plan trustees on August 10, 1988. In those minutes, the trustees purport to express the intent of the Plan to avoid duplicate payments. It will not be necessary to strike those minutes from the record, as the court has placed no weight on the trustees' *ad hoc* expression of Plan intent. *See supra.*

IT IS BY THE COURT THEREFORE ORDERED that plaintiffs' motion for summary judgment is granted. IT IS FURTHER ORDERED that defendant's motion for summary judgment is denied. IT IS FURTHER ORDERED that plaintiffs' motion to strike is denied.