John R. **FRERKING** and Deborah D. Frerking, Plaintiffs,

v.

**BLUE CROSS–BLUE SHIELD OF KANSAS,** Defendant.

Civ. A. No. 88–1364–T.

United States District Court, D. Kansas.

April 9, 1991.

878

Rodney H. Busey, Busey & Tolle Chartered, Wichita, Kan., for plaintiffs.

Alan L. Rupe, Grace and Rupe, Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This matter comes before the court on the motion of defendant for summary judgment. The action is for recovery of insurance benefits under a group health plan, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).

Plaintiff John R. Frerking became an employee of Bank IV on October 29, 1986. As an employee, plaintiff took advantage of health care insurance plan offered by his employer through defendant Blue Cross–Blue Shield. This plan is an "employee welfare benefit plan" within the meaning of the 29 U.S.C. § 1002. The plan covered John, his wife Deborah D. Frerking, and their two daughters. The benefit plan contained a "rider" that excluded coverage for certain "preexisting conditions." This rider imposed a waiting period during which coverage was to be excluded for a specific period of time beginning on the effective date of the policy. The rider stated:

> The waiting period is 240 days of continuous coverage for the following:
>
> any condition for which You asked or received evaluation, diagnosis, or medical treatment in the 90 days just before Your Effective Date.

The effective date for the plan with respect to plaintiffs' family was October 29, 1986. Thus, for any condition for which plaintiffs asked or received evaluation, diagnosis, or medical treatment from July 29, 1986 through October 29, 1986, the plan excluded coverage through June 29, 1987.

Plaintiffs submitted various claims for medical treatment received by their family from January 28, 1987 through June 16, 1987. These claims were denied by defendant on the ground that they were excluded under the preexisting condition rider. Plaintiffs initially filed suit in state court, and defendant thereafter transferred the case to federal court. Subject matter jurisdiction is conferred under 29 U.S.C. § 1132(e)(1), which allows "participants" or "beneficiaries" of plans governed by ERISA to bring federal civil actions for the recovery of benefits due under the plan.

Summary judgment is appropriate when the documentary evidence filed with the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...."

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial —whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The burden at the summary judgment stage is similar to the burden of proof at trial. The court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact on its claim(s). Rule 56, however, imposes no requirement on the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323, 106 S.Ct. at 2552 (emphasis in original). Once the moving party has properly supported its motion for summary judgment, the non-moving party may not rest upon mere allegations or denials, but must set forth specific facts showing a genuine issue for trial, relying upon the types of evidentiary materials contemplated by Rule 56. Fed.R. Civ.P. 56(e). Each party must demonstrate to the court the existence of contested facts on each claim it will have to prove at trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden the party will face at trial on the particular claim. *Anderson,* 477 U.S. at 254, 106 S.Ct. at 2511.

As an initial matter, the parties dispute the appropriate standard for this court's review. Defendant urges the court to review its decision to deny benefits under the deferential arbitrary and capricious standard, whereas plaintiff argues for a *de novo* standard of review.

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Court held "that a denial of benefits challenged under § 1132(a)(1)(B) [of ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* 109 S.Ct. at 956. The Court further specified that the appropriate standard of review is not affected by the possible motivations of the plan's administrators or fiduciaries. "Thus, for purposes of actions under § 1132(a)(1)(B), the *de novo* standard of review applies regardless of whether the plan at issue is funded or unfunded and regardless of whether the administrator or fiduciary is operating under a possible or actual conflict of interest." 109 S.Ct. at 956. *See also Carland v. Metropolitan Life Ins. Co.*, 727 F.Supp. 592, 598 (D.Kan. 1989); *Davidson v. St. Francis Regional Med. Center Employee Group Health Plan*, 715 F.Supp. 1038, 1039 (D.Kan.1989).

Defendant attempts to distinguish *Bruch* on the ground that this case involves a plan administered by a plan insurer rather than an employer. Although this is a distinction, the court is unable to discern the significance of this distinction. The decision in *Bruch* was based on the law of trusts and did not depend upon the identity of the trustee.

■ Defendant also submits that "[t]he requisite discretionary authority to which the 'arbitrary and capricious' standard is applicable is present in the relationship between Bank IV as the Plan Administrator and the defendant as the insurer of the welfare benefit plan covering the plaintiffs as participants." Doc. 37, at 7. The court perceives little to distinguish this from the argument—rejected in *Bruch*—that the fiduciary of a plan is vested with inherently discretionary authority to interpret the terms of the plan. *See* 109 S.Ct. at 955; *Carland*, 727 F.Supp. at 598. The holding of *Bruch* requires that the court look only to the language of the plan, and not the relationship of the parties, to determine whether an administrator or fiduciary has discretionary authority to interpret the plan they administer.

■ Defendant has directed the court's attention to no language in the plan granting it the power to interpret the plan or otherwise to determine the eligibility of the plan's participants. *Cf. Pratt v. Petroleum Prod. Management, Inc.*, 920 F.2d 651, 657 n. 7 (10th Cir.1990). Instead, defendant apparently relies on a provision that authorizes changes in the plan only if approved by the Board of Directors of Blue Cross. Doc. 28 at 3. This provision states:

> No agent or representative of the Plan other than its Board of Directors is authorized to change this Certificate or waive any of its provisions.

Group Certificate, Part 5, L. (Doc. 1, Eht. A). The court rejects any reliance on this provision as the basis for defendant's purported authority to interpret the plan. To be sure, broad generic language granting the fiduciary the power to "construe and interpret" the plan is sufficient to bring the fiduciary's interpretation of disputed terms within the arbitrary and capricious standard. *Pratt*, 920 F.2d at 658. Even under the most expansive of readings, however, authority to "change" or "waive" provisions cannot be construed as authority to interpret or apply those provisions that are currently part of the plan. Finding no language in the plan that grants defendant discretionary authority to interpret it, the court reviews *de novo* defendant's interpretation of the rider provision.

■ Because the plan at issue is regulated by the provisions of ERISA, federal common law shapes the parties' substantive rights and obligations. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1987). In shaping federal common law, the court may look to general principles of law established by the states. *Downriver Community Fed. Credit Union v. Penn Square Bank*, 879 F.2d 754, 761 (10th Cir.1989), *cert. denied*, — U.S. ——, 110 S.Ct. 1112, 107 L.Ed.2d 1019 (1990).

Under universally accepted principles of contract construction, ambiguities in an in-

surance contract are to be construed against the insurer. *E.g., Young v. Fidelity Union Life Ins. Co.,* 597 F.2d 705, 707 (10th Cir.1979); *Heinson v. Porter,* 244 Kan. 667, 672, 772 P.2d 778 (1989); *Lightner v. Centennial Life Ins. Co.,* 242 Kan. 29, 744 P.2d 840, syl. ¶ 7 (1987). In the absence of ambiguity, however, the terms of the insurance policy are to be contrued according to their plain, ordinary, and popular sense. *E.g., Kansas State Bank & Trust Co. v. Old Am. Ins. Co.,* 491 F.2d 307, 309–10 (10th Cir.1974); *Unified School Dist. No. 501 v. Continental Casualty Co.,* 723 F.Supp. 564, 566 (D.Kan. 1989). It is also well-established that the burden is upon the insurer to demonstrate that the insured's claim falls within the terms of an exclusionary clause, and that such clauses are interpreted narrowly. *E.g., Texas E. Transmission Corp. v. Marine Office–Appleton & Cox Corp.,* 579 F.2d 561, 564 (10th Cir.1978); *Milliken v. Fidelity & Casualty Co.,* 338 F.2d 35, 41 & n. 13 (10th Cir.1964); *Dronge v. Monarch Ins. Co.,* 511 F.Supp. 1, 4–5 (D.Kan.1979); *Central Sec. Mutual Ins. Co. v. DePinto,* 235 Kan. 331, 334–35, 681 P.2d 15 (1984). The court adopts these principles in ruling on the present motion.

As noted, the insurance plan excludes coverage for any "condition" for which plaintiffs "asked or received evaluation, diagnosis, or medical treatment" between the dates of July 29, 1986 and October 29, 1986.* Because the term "condition" receives no special definition under the policy, the court gives this term its ordinary meaning.

Defendant refused coverage for the various claims of three beneficiaries covered under plaintiffs' policy.

### A. *Plaintiff John R. Frerking*

■ From August 13, 1986 through September 23, 1986, John Frerking received medical evaluation or treatment for "adjustment disorder with depressed mood," an ulcer, and complaints of abdominal pain. From February 18, 1987 through May 26, 1987—during the 240–day waiting period—this plaintiff received treatment for: "abdominal pain," various colon and gastrointestinal tract disorders, and "psychotherapy for adjustment disorder with mixed emotions." Defendant submits that "the evidence is clear" that the evaluations and treatments between February 18 and May 26 were for "conditions" existing within the 90–day period before October 29, 1986. Plaintiff opposes this with a statement from plaintiffs' physician—Dr. Richard Hieb—who disputes the relationship between John Frerking's earlier complaints of "abdominal pain" and his subsequent colon disorder. In its reply, defendant correctly notes that the dispute is one of "conclusions reached by different doctors," which defendant characterizes as a question of law rather than fact. Doc. 37, at 5.

The court finds that defendant has failed to sustain its burden with regard to these claims. Differing conclusions reached by different physicians present a dispute that is particularly ill-suited to summary judgment disposition. Accordingly, the court will deny the motion with respect to these claims.

### B. *Deborah D. Frerking*

■ This plaintiff received medical evaluation or treatment from August 12, 1986 through October 20, 1986 for depression-related problems, right-side abdominal pain, and an ovarian cyst that was unrelated to the abdominal pain. During the month of October 1986, Dr. Hieb also dis-

---

* In this regard, the court finds defendant's reliance on a line of several Kansas cases to be misplaced. In *Southards v. Central Plains Ins. Co.,* 201 Kan. 499, 441 P.2d 808 (1968), *Bishop v. Capitol Life Ins. Co.,* 218 Kan. 590, 545 P.2d 1125 (1976), and *McDaniel v. State Farm Mutual Ins. Co.,* 3 Kan.App.2d 174, 591 P.2d 1094 (1979), coverage was excluded for preexisting conditions, even though the insureds' condition was undiagnosed and the insureds were unaware of their condition. By contrast, the express terms of the policy in this case provide for exclusion only of those conditions for which plaintiffs "asked or received evaluation, diagnosis, or medical treatment in the 90 days just before" the effective date. Thus, defendant must prove both the existence of a preexisting condition *and* that plaintiffs sought an evaluation, diagnosis, or treatment of this condition before October 29, 1986.

882

cussed with plaintiff the possibility of an appendectomy. Plaintiff underwent an appendectomy in April 1987. In addition, plaintiff received therapy for her depression-related problems from March 1987 through June 1987. Plaintiff submits that the appendectomy did not relate to any preexisting condition, relying on a written statement by Dr. Hieb. According to Dr. Hieb, he recommended an appendectomy in October 1986 "solely based on family history and not on any positive physical findings."

Based on the opinion of Dr. Hieb, the court cannot say that the appendectomy related to a preexisting condition as a matter of law. Plaintiff does not, however, controvert that her depression-related problems were due to a condition predating October 29, 1986, and the court therefore finds defendant's motion meritorious as to these claims.

C. *Emilie Frerking*

■ Plaintiffs' daughter received medical evaluation and treatment in August and September of 1986 for "otitis/ear infection." In January and March of 1987, Emilie received treatment for "unspecified otitis media." Plaintiff has submitted the statement of Dr. Hieb that the latter treatments were not related to any preexisting condition, but rather were "acute and independent episodes of infection, not unlike [a] child that would have a sore throat four or five times a year."

The court finds that plaintiffs have sufficiently controverted defendant's motion to raise an issue of fact with regard to these claims.

IT IS BY THE COURT THEREFORE ORDERED that defendant's motion for summary judgment (Doc. 27) be denied.