William Bret **HAMMERS**, Plaintiff,

v.

**AETNA LIFE INSURANCE CO.,** Defendant.

**Civil Action No. 94–1302–FGT.**

United States District Court, D. Kansas.

April 18, 1996.

James A. Cline, Toomey, Russell, Gregory & Pilgreen, L.L.C., Wichita, KS, for William Bret Hammers.

Stephen M. Kerwick, Foulston & Siefkin, Wichita, KS, for Aetna Life Insurance Company.

### MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on the defendant's motion for summary judgment (Doc. 18). Plaintiff brings this action under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., for the recovery of benefits under an employee health plan.[1] The defendant con-

---

1. The plaintiff appears to concede that his state law claims are preempted by ERISA. The court shall not discuss this issue further.

tends that coverage is barred by the preexisting condition limitation contained in the plan.

The facts as set forth by the parties reveal the following. In the summer of 1993, while he was a graduate student at the University of Arizona, the plaintiff was diagnosed with cancer, specifically squamous cell carcinoma on his tongue. The plaintiff returned to Wichita, Kansas, where his family lived, for treatment. The treatment included surgery, which was performed in August 1993.

On November 1, 1993, the plaintiff went to work for Foster Design Company in Wichita, Kansas. Under the Foster Design Company's health plan, the plaintiff was entitled to health coverage after three continuous months of service.

On November 29, 1993 and January 3, 1994, the plaintiff saw his doctor, David W. Sargent, D.O., for two office visits. The nature and scope of these office visits remain in dispute.

In approximately early February 1994 (the exact date not being specified), the plaintiff noticed a lump in his neck. The defendant asserts that this lump caused the plaintiff to schedule another visit with Dr. Sargent for February 8, 1994. The plaintiff asserts that he pointed the lump out to Dr. Sargent on his regularly scheduled check-up on February 8, 1994. The plaintiff asserts that he did not schedule an office visit specifically for the lump in his neck.

At the appointment on February 8, 1994, Dr. Sargent ordered a biopsy of the lump in plaintiff's neck. The biopsy revealed cancer. Following the diagnosis of cancer, plaintiff underwent surgery, radiation treatment and additional follow-up care. The cost of these treatments and services is the subject of the present lawsuit.

The terms of the Aetna coverage purchased under the multi-employer program in which Foster Design Company participated contained the following provisions governing coverage for preexisting conditions:

A condition is a preexisting condition if, during the last 90 days before the person's current period of coverage became effective:

* treatment or services were received; or
* it was diagnosed or treated; or
* prescription drugs or medicines were prescribed or taken for that condition.

. . . .

During the first 365 days of a person's current period of coverage, Covered Medical Expenses do not include any expenses incurred for treatment of a "preexisting condition" or a condition which is caused or contributed to by or is a consequence of a "preexisting condition".

However:

If your are in an Eligible Class and your Eligibility Date was the Original Effective Date of the Plan; and

If you have been insured for medical coverage for less than one year;

During the first 365 days of a person's current period of coverage, Covered Medical Expenses for treatment of a "preexisting condition" or a condition which is caused or contributed to by or is a consequence of a "preexisting condition" include only the first $2,000 of Covered Medical Expenses for which no benefit will be payable under any other part of this Plan or any other group plan of your Employer.

Attachment to Doc. 19, at p. 14.

Both of plaintiff's treating physicians, David W. Sargent, D.O., and David B. Johnson, M.D., described plaintiff's carcinoma of February 1994 as a recurrence of the cancer diagnosed in the summer of 1993, and not a new primary tumor. Plaintiff's doctors did, however, consider the plaintiff to have been in complete remission with no evidence of active disease subsequent to the surgery in August 1993.

When the plaintiff's initial claim for coverage was disputed, Dr. Sargent signed a letter which stated:

To Whom It May Concern:

Between 11/01/93 and 01/31/94, I saw

W.B. (Bret) Hammers,

S.S. # 515–76–3601,

for the purpose of regularly scheduled checkups. During the time period from 11/01/93 to 01/31/94 he did not receive from

me treatment or services for his current condition, his current condition was not diagnosed or treated, and no prescription drugs or medicines were prescribed or taken for his current condition.

This letter had been written by the plaintiff's father.

Dr. Sargent testified that he saw the plaintiff in November 1993 and January 1994 as follow-up visits for the earlier carcinoma treatment.

The August 1993 surgery involved a radical neck dissection and the removal of approximately 50 lymph nodes from the right side of plaintiff's neck. Pathology showed no evidence of cancer in the lymph nodes. After plaintiff's surgery in August 1993, there was no clinical evidence of cancer until the tumor was discovered in February 1994.

During the two office visits in November 1993 and January 1994, Dr. Sargent made no diagnosis of cancer. Dr. Sargent prescribed no medication or prescription drugs for plaintiff and no cancer was treated during that time frame. Prior to February 1994, there was no evidence of cancer in the plaintiff's right neck.

■ The Federal Rules of Civil Procedure provide that summary judgment is appropriate when the documentary evidence filed with the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

■ The burden at the summary judgment stage is similar to the burden of proof at trial. The court must enter summary judgment, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact on its claim. Rule 56, however, imposes no requirement on the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323, 106 S.Ct. at 2553 (emphasis in original). Once the moving party has properly supported its motion for summary judgment, the nonmoving party may not rest upon mere allegations or denials contained in the nonmoving party's pleadings, but must set forth specific facts showing a genuine issue for trial, relying upon the types of evidentiary materials contemplated by Rule 56. Fed.R.Civ.P. 56(e). Each party must demonstrate to the court the existence of contested facts on each claim it will have to prove at trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden the party will face at trial on the particular claim. *Anderson*, 477 U.S. at 254, 106 S.Ct. at 2513.

■ At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are functions of the finder of fact, not the functions of the judge when ruling on a motion for summary judgment. The evidence of the nonmoving party is to be believed. All justifiable inferences are to be drawn in favor of the nonmovant. *Id.* at 255, 106 S.Ct. at 2513–14.

Although 29 U.S.C. § 1132(a)(1)(B) provides for judicial review of a denial of benefits due under a benefit plan, it does not set out the appropriate standard of review. The

parties have not addressed the standard of review applicable to the denial of benefits under this ERISA plan (i.e., de novo or arbitrary and capricious). Further, the parties have not even identified what role the defendant played under the ERISA statutory scheme, i.e., was the defendant the claims administrator.

■ A denial of benefits challenged under § 1132(a)(1)(B) is reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). Deference is greatly diminished, however, when the claims administrator is acting under a conflict of interest. *Id.*

■ A conflict of interest is relevant only if the plan documents provide discretion. *Torre v. Federated Mut. Ins. Co.,* 854 F.Supp. 790, 813 (D.Kan.1994).

■ The first question for the court is whether the administrator of the plan had the requisite discretionary authority. The court must examine the plan documents to ascertain whether an administrator has discretionary authority. The documents need not use the words "discretion" or "discretionary authority," but must give the power to construe disputed terms or to resolve disputes over eligibility for benefits. *Id.* The parties have directed the court to no language in the plan documents relevant to the determination of whether the defendant possessed the power to determine eligibility for benefits.

It appears to the court that the defendant may occupy the dual role of policy issuer and ERISA fiduciary of a plan consisting of that policy. There is a conflict of interest inherent in the situation in which an insurance company both issued the policy and is charged with the responsibility of administering an ERISA plan consisting of that policy. *Id.* at 814–15 & n. 24. The parties have not addressed this issue.

■ In addition to the deficiencies of briefing previously mentioned, the court finds there to be a genuine issue of fact as to whether plaintiff's February 1994 treatment for cancer falls within the preexisting condition limitation on coverage.

Plaintiff's doctors have testified that after the surgery in August 1993, the plaintiff was in remission with no evidence of disease. During the 90 day period from November 1, 1993 to February 1, 1994, plaintiff saw Dr. Sargent on two occasions. Those two appointments were for the purpose of regularly scheduled checkups. During that time period, plaintiff was not treated for cancer, cancer was not diagnosed, and no prescription drugs or medicines were prescribed or taken for any cancerous condition. Plaintiff's cancerous condition was not diagnosed or treated during those office visits.

There is sufficient evidence before the court to create a triable fact issue as to whether plaintiff's cancerous condition was a preexisting condition within the meaning of the policy. The court cannot rule as a matter of law that the treatment plaintiff received was for a preexisting condition within the meaning of the plan. *Frerking v. Blue Cross–Blue Shield of Kansas,* 760 F.Supp. 877 (D.Kan.1991).

**IT IS BY THE COURT THEREFORE ORDERED** that defendant's motion for summary judgment (Doc. 18) is hereby denied.