ORDER
PER CURIAM.
BRIEF FACTUAL OVERVIEW AND PROCEDURAL HISTORY
The facts in this case are not in dispute. Tammy Atkinson was killed in a car accident caused by the negligence of Morris Duane Buckles. The Buckles vehicle was not insured. Tammy was an insured under her father’s automobile policy underwritten by Northwestern National Insurance Company (NNIC). Mr. Atkinson paid an additional premium lor* “Uninsured motorists” benefits’. Separate coverage for “underinsured motorists” benefits’ was included in the basic premium. NNIC paid the policy limits ($50,000) for uninsured motorists’ benefits, however, declined to pay the additional claim for “underinsured motorists’ benefits”.
Plaintiff filed an action in Tribal Court seeking declaratory relief for the policy limits of $50,000 for the “underinsured motorists’ benefits” which NNIC declined to pay. Plaintiff subsequently filed a Motion for Summary Judgment which was granted by the Tribal Court on August 7, 2002. NNIC filed a timely petition for this Court’s review of the Tribal Court order.
ISSUES PRESENTED
Appellant frames the issue as follows: “May an insured recover uninsured and underinsured motorist coverage when involved in an automobile accident with an uninsured motorist tortfeasor?”
Appellant’s version seeks resolution in the form of a public policy edict from this Court. Inasmuch as the issue involves the interpretation of an insurance policy, which in turn is governed by contract law, we respectfully decline to make a general public policy opinion, leaving such task to our Tribal Council. Thus, we believe the issue narrowly framed by the appellee is more appropriate.
STANDARD OF REVIEW
The Tribal Court’s interpretation of an insurance contract, as well as an order for summary judgment, are matters of law, *288 thus we review de novo. Title II CCOJ 2000 § 202.
DISCUSSION
In its excellent brief, appellant urges that “an individual cannot recover both uninsured and underinsured motorist coverage because a motorist tortfeasor either: 1) Has insurance; or 2) Has no insurance.” Buttressing this argument, appellant states that: a) A plain reading of the disputed coverage provision does not provide underinsurance coverage under the stated facts of the case; and b) Despite the argument and case law recited by appellee, appellee still fails to demonstrate how the policy definition of an underinsured motorist is triggered. Accordingly, appellant urges this Court to adopt the reasoning set forth by the Montana Supreme Court in Dakota Fire Ins. Co., a Din of Employers Mut. Companies v. Oie, 1998 MT 288, 291 Mont. 486, 968 P.2d 1126 (1998), holding that uninsurance and underinsurance coverages are mutually exclusive.
Appellee argues: “Underinsurance and uninsurance are not mutually exclusive under the Northwest National Policy which is the subject of this suit.” Appellee further argues: “The reasonable consumer of insurance products in this case should expect that if he paid two premiums for identical coverages, he should expect to receive two coverages in the event of an accident.” Appellee supports her argument by stating that “reasonable construction of the policy in question favors coverage in this ease” in that the pertinent provisions are ambiguous and that ambiguities in an insurance policy are construed against the carrier. Appellee concludes her argument stating “(t)he Trial Court correctly applied applicable law pursuant to the terms of the Northwest Policy and found coverage.”
Appellant states that this case presents an opportunity for this Court to articulate the difference between uninsu-rance and underinsurance motorist coverages contained within auto insurance policies. While we are appreciative of any opportunity to be helpful in clarifying or interpreting legal language which is properly before us, we decline to issue a general policy opinion for two reasons: 1) Our Tribal Council has yet to speak on this issue, thus we leave that matter for another day to the more appropriate body; and 2) The issue before us can, and should be, decided on the specific language used by the contracting parties, thus our decision is narrowly confined to the parties herein.
Turning now to the specific language contained in the policy issued by NN1C, appellant states that a “plain reading of the policy provisions at issue provides a clear and unambiguous definition of the meaning of underinsurance.” We must respectfully disagree.
First, we note that the definition of “un-derinsured motor vehicle” is usually governed by statute and policy definitions which conform thereto. As previously noted, our Tribal Council has not spoken on this issue, thus the language of the policy controls.
In the NNIC policy “underinsurance” is defined in an endorsement entitled, “Montana Uninsured Motorists Coverage.”
“F. ADDITIONAL DEFINITIONS”
3. “Uninsured motor vehicle” means a land motor vehicle or trailer:
a. For which no liability bond or policy at the time of an “accident” provides at least the amounts required by the applicable law where a covered “auto” is principally garaged;
b. That is an underinsured motor vehicle. An underinsured motor vehicle is a motor vehicle or trailer to which a liability bond or policy applies at the time of an “accident”, but the amount paid un *289 der that bond or policy to the “insured” is not enough to pay the full amount the insured is legally entitled to recover as damages;
c. For which an insuring or bonding company denies coverage or is or becomes insolvent; or
d. That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must either:
(1) Hit an “insured”, a covered “auto” or a vehicle an “insured” is “occupying”, or
(2) Cause “bodily injury” with no physical contact with an “insured”, a covered “auto” or a vehicle an “insured” is “occupying” at the time of the “accident” provided the facts of the “accident” can be corroborated by competent evidence other than the testimony of any person having a claim under this or any similar insurance as the result of such “accident”.
First, we note only “sub-paragraphs a and b” apply to the facts herein. Next, we note that according to the heading of paragraph 3, “Uninsured motor vehicle” is defined, not “underinsured motor vehicle”. Nowhere in the endorsement could we find a separate section defining “underinsured motor vehicle”.
Thus, the initial question arises: Why would a reasonable person look under the heading of “Uninsured motor vehicle” if they were looking for the definition of “Underinsured motor vehicle”? Indeed, if the definition of “Underinsured motor vehicle” is found under “Uninsured motor vehicle”, at best it would appear to be misplaced.
Secondly, if the reasonable person could overlook the fact that both sub-paragraphs a and b are defining “uninsured motor vehicle” and he was convinced that the definition of “underinsured motor vehicle” was somewhere within the confines of paragraph 3, he could easily interpret either sub-paragraph a or b as defining an “underinsured motor vehicle”. “Sub-paragraph a” states: “For which no liability bond or policy at the time of an ‘accident’ provides at least the amounts required by the applicable law where a covered ‘auto’ is principally garaged.” (Emphasis ours.) Even though the definition begins with the words “For which no liability bond or policy ... ”, the qualifying phrase, “provides at least the amounts required” suggests that a liability bond or policy could exist which does not provide the amounts required, further suggesting underinsurance not un-insurance. We readily concede that sub-paragraph b prorides a more definite approach to defining “underinsurance” by using affirmative language, “An underin-sured motor vehicle is a motor vehicle or trailer to which a liability bond or policy applies....” Nonetheless, we do not believe that a reasonable person would, upon reading paragraph 3, immediately understand that only “sub-paragraph b” defines underinsurance. We believe that both paragraph 3a and 3b could be interpreted as defining underinsurance.
While we acknowledge that the above cited or similar language has been commonly used by scores of insurance companies throughout the United States, it falls woefully short of being a model of clarity. Mere common usage by many insurance companies does not validate ambiguous language; it simply raises the question, “why do they”? It may be that the rationale for such confusing language and awkward construction can be explained by the differing ways that state legislatures define uninsurance and underinsurance. One possible example which might explain the use of the confusing language in the NNIC policy is that some states in their statutory scheme do not distinguish between the two coverages. For example, Nevada statutes do not create a require- *290 merit that insurers provide separate coverages against uninsured and underinsured motorists, rather insurers are required to make uninsured motorist coverage available, and such coverage must include coverage against underinsured motorists. NKS «9015.020; NUS «871!.145(2) as interpreted by Hall v. Farmers Ins. Exchange, 105 Nev. 19, 768 P.2d 884 (1989). Such statutory definitions render underinsurance a mere component of uninsurance. When read in the light of the Nevada statutory scheme, the NNIC language is certainly more understandable. Further, we can empathize with Insurance carriers doing business in multiple jurisdictions attempting to be cost effective by using “boilerplate” language that will address the myriad statutory variations. (Note: The “Montana Uninsured Motorists Coverage” endorsement used by the NNIC policy herein.) Nonetheless, in the absence of our own statutory scheme, we are required to look only to the policy language and, in doing so we are governed by general principles of contract law. .
In construing an insurance policy, our main goal is to determine and carry out the intentions of the parties and when the meaning of a term or phrase is plain, we will apply such term or phrase in accordance with the everyday meaning which a lay person would ascribe to it. In other words, plain terms and phrases require no interpretation and therefore do not require us to turn to rules of construction or case law. Of equal import, the policy language must be interpreted to mean what a reasonable person in the insured’s position would understand it to mean. It is our opinion that terms and phrases in insurance policy contracts are ambiguous if they may be reasonably interpreted in more than one way.
As shown above, the definition of under-insured motorist contained in the NNIC policy is, without question, ambiguous. Assuming that sub-paragraph b defines underinsured motorist, it has been defined as a component of uninsured motorist. We do not believe that it is reasonable that a layman would be expected to possess such knowledge. Even lawyers, without knowing the history and practice of the auto insurance industry, would likely, be confused by the manner in which underin-surance has been defined. To conclude that the language is ambiguous, one only needs to read the definitions of uninsured and underinsured motorist contained in the policy in Oie, supra, upon which appellant relies:
“The uninsured motorist coverage defines an ‘uninsured motor vehicle’ as a land motor vehicle or trailer of any type: 1. To which no bodily injury liability bond or policy applies at the time of the accident ....” (at p. fill; 1129) (Our emphasis.)
As can be seen, uninsured and underin-sured are not defined in the same section, thus eliminating any possibility of confusing the two. Next, there is no possibility that the definition of uninsured could be misinterpreted to mean underinsured, in that the language makes clear that no insurance policy of any kind applies to the vehicle at the time of the accident. The Oie court goes on to recite the definition of underinsurance which is similar to “sub-paragraph b” in the NNIC policy:
“The underinsured motorist coverage (as modified by the amendatory - endorsement) defines an ‘underinsured motor vehicle’ as a land motor vehicle or trailer of any type to which a bodily injury liability bond, or policy applies at the time of the accident but the amount paid for 'bodily injury’ under that bond or policy to an 'insured’ is not enough to pay the full amount the 'in *291 sured’ is legally entitled to recover as damages. ” (id.) (Our emphasis.)
Contrary to appellant’s assertion that a “plain reading of the policy provisions at issue provides a clear and unambiguous definition of the meaning of underinsurance”, we believe the policy provisions at issue are ambiguous in that a reasonable person could interpret “sub-paragraph a” as defining both an uninsured and underin-sured motorist notwithstanding the fact that “sub-paragraph b” provides a more straightforward definition of underinsured motorist.
Appellant also argues that plaintiff has not demonstrated how the policy definition of underinsurance is triggered. Stated simply, appellant urges that the driver/owner of the uninsured vehicle cannot also be an underinsured; either he has insurance or he has no insurance, it cannot be both. Absent the ambiguous definitions in the policy, we would agree. However, if the policy provisions are sufficiently ambiguous that a reasonable person might interpret one section (namely, “sub-paragraph a”) as defining both uninsured and underinsured identically, then, in that specific instance, a driver/owner of the uninsured vehicle can be both uninsured and underinsured.
Appellee contends that not only are “un-derinsurance” and “uninsurance” defined identically, they are not mutually exclusive in the NNIC policy for three reasons: 1) No separate definition of an underinsured motor vehicle exists; 2) No separate endorsement for underinsurance; and 3) No contract provision exists which makes these coverages mutually exclusive.
We agree with appellee that nowhere in the policy does it state that underinsurance and uninsuránce are mutually exclusive. Further, both are defined in the same endorsement and both are entangled with the definition of one another. Stated simply, appellee’s argument is: Underin-surance is defined as a component of unin-suranee. Thus, it is reasonable to suggest that if I have an uninsured motorist claim and if underinsurance is a component of uninsurance, then I have both a claim for uninsurance and underinsurance. Whether one believes this reasoning to be suspect or not, it has been made possible by the ambiguity within the policy.
Further, appellee’s argument is supported by well settled principles of contract law. As previously stated, when we interpret an insurance contract our goal is to construe the terms of the policy to determine and carry out the intentions of the parties. Ambiguities will be construed against the insurer. (See Kunin v. Benefit Trust Life Ins. Co., 910 F.2d 534 (9th Cir.1990); Riley v. Viking Ins. Co. of Wisconsin, 733 P.2d 556 (1987); summed up by Frerking v. Blue Cross-Blue Shield of Kansas, 760 F.Supp. 877, 880-881 (D.Kan.1991) “Under universally accepted principles of contract construction, ambiguities in an insurance contract are to be construed against the insurer.”)
The parties herein intended that an insurance policy would be issued which would cover the insured for two separate and distinct coverages: uninsured motorist and underinsured motorist. Appellee paid a separate premium for the uninsured motorist coverage; and the underinsured coverage was set forth in the declarations page indicating that the premium was included in the basic policy. The parties did not intend that only one of these coverages would be available, otherwise the policy would have contained a delimiting clause. The parties did not intend that the two coverages were mutually exclusive; otherwise the policy would have contained such a provision. NNIC does not argue that both coverages might not be due under their policy, but rather, argues that the *292 insured does not qualify for the underin-surance coverage because the facts of this case do not trigger such coverage. Whether plaintiff is entitled to duplicate coverage depends on the definitions of uninsured motorist and underinsured motorist; which definitions we find, not only ambiguous, but hopelessly entangled, one to another,
We are in complete agreement with appellant that “you are either insured or you are not insured” and that to be an underinsured motorist one needs to first be insured. However, this very sound, logical argument that appellant now urges upon this Court should have been expressed in the first instance to its policy holder within the confines of the poliey. Regrettably, the hapless construction of the pertinent provisions, to wit: the definitions of uninsured and underinsured, are susceptible of more than one interpretation. NNIC’s failure to construct its policy in clear and unambiguous terms opens the door to the additional claim for under-insurance. In accord with the settled principles set forth above, such failure must be visited upon the insurer. Accordingly, our Tribal Court was correct in granting summary judgment in favor of plaintiff.
Affirmed.
CONCUR: GERARD M. SCHUSTER, Associate Justice, CARROLL JAMES DECOTEAU, Associate Justice.