**Rufus A. CALDWELL, III, Plaintiff,**

v.

**LIFE INSURANCE COMPANY OF NORTH AMERICA, Defendant.**

**Civil Action No. 93–2550–GTV.**

United States District Court, D. Kansas.

March 7, 1997.

§ 1395dd(c).

William P. Ronan, Cloon, Bennett & Ronan, Overland Park, KS, for Rufus A. Caldwell, III.

Phillip R. Fields, Wichita, KS, for Western Atlas Intern., Inc.

Richard N. Bien, James A. Durbin, Swanson, Midgley, Gangwere, Kitchin & McLarney, L.L.C., Kansas City, MO, Craig T. Kenworthy, Swanson, Midgley, Gangwere, Kitchin & McLarney, L.L.C., Overland Park, KS, for Life Ins. Co. of North America.

## MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

Plaintiff Rufus A. Caldwell, III, challenges the decision of defendant Life Insurance Company of North America (LINA) to deny him disability benefits. The Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, governs Caldwell's claim in which he alleges entitlement to disability benefits through a group disability insurance policy, which LINA issued to the plaintiff's former employer, Western Atlas International (Western). Caldwell alleges that LINA refused to pay the disability benefits to which he is entitled and seeks $310,860.00 in disability payments. Alternatively, he contends that LINA failed to provide him with a full and fair review of benefit denial and requests that the matter be remanded for further proceedings.

A trial to the court was held on August 23, 1996. After careful consideration of the evidence and arguments in this case, the court concludes that the case will be remanded to LINA as plan administrator in order to allow Caldwell to receive a full and fair review of LINA's denial of his disability claim.

Pursuant to Fed.R.Civ.P. 52(a), the court makes the following findings of fact and conclusions of law.

### I. Findings of Fact

1. On January 31, 1989, during the course of his employment with Western, Caldwell was injured when he fell to the ground climbing out of his truck.

2. LINA had issued a group disability insurance policy to Western that was in effect on the date of Caldwell's injury. Under the terms of the policy, LINA pays total disability benefits to an employee for the first twenty-four months after sickness or injury if the employee cannot "perform the essential duties of his occupation." After twenty-four months, an employee's eligibility for total disability payments continues only if the employee is "unable to perform all the essential duties of any occupation for which he is or may reasonably become qualified based on his education, training or experience." (Def.'s Tr. Ex. 400, at 238.) The policy specifies that the monthly benefit is sixty percent of the employee's salary at the time of total disability offset by any other benefits received.

3. Under the policy, disability payments commence when LINA receives "due proof that: (1) the Employee becomes Totally Disabled while insured for this Long Term Disability Insurance; and (2) his Total Disability has continued for a period longer than the Benefit Waiting Period shown in the Schedule." (Def.'s Tr. Ex. 402, at 247). The policy defines the benefit waiting period as ninety days of continuous total disability.

4. The policy enumerates situations in which an employee's insurance coverage may terminate, including the earlier date of the following: the employee ceases to be an eligible employee or the employee ceases active service with the employer.

5. On April 28, 1989, Caldwell's employment with Western ended.

6. On December 28, 1993, Caldwell filed the instant case against Western, alleging several claims of breach of contract and retaliatory discharge. (Doc. 1.)

7. On March 21, 1994, Caldwell sent a notice of disability claim to LINA, which responded by sending him a claim form on April 11, 1994. Caldwell returned the completed claim form on April 25, 1994.

8. On March 24, 1994, Caldwell filed a motion to amend his complaint to add LINA as a defendant. The motion was granted, and Caldwell filed the amended complaint on April 24, 1994.

9. On May 13, 1994, LINA wrote Caldwell, asking about his delay in filing a claim based upon a January 1989 injury. On June 7, 1994, Caldwell's attorney responded, stating that Western had not informed Caldwell until March 6, 1994, that LINA was the disability insurance carrier.

10. On October 4 and 30, 1994, LINA sent letters to Caldwell to request additional

medical and employment information. (Def.'s Tr. Ex. 400, at 37–38, at 150–51.)

11. On December 13, 1994, the court ruled upon Lina's motion to dismiss or to stay the proceedings for failure to exhaust administrative remedies. *See Caldwell v. Western Atlas Int'l,* 871 F.Supp. 1392 (D.Kan.1994). The court found that ERISA preempted Caldwell's state contract claim against LINA. The court further ruled that Caldwell had not exhausted his administrative remedies, a prerequisite to seeking judicial review, in that he had not received an initial decision on his claim or requested an administrative review. The court deemed Caldwell's request for review filed as of the date of its order of December 13, 1994. Additionally, the court stayed proceedings for 120 days, until April 12, 1995, to allow LINA to conduct its review. The parties were directed to file a status report with the court within 120 days.

12. LINA requested additional medical information from Caldwell or his attorney in letters dated December 15, 1994, January 10, 1995, February 16, 1995, March 13, 1995, and April 19, 1995. (Def.'s Tr. Ex. 400, at 39–42, 80, 113–14.) LINA also sent letters requesting medical information directly to Caldwell's identified medical providers. (Def.'s Tr. Ex. 400, at 81–98, 136.)

13. On March 17, 1995, Caldwell and Western jointly dismissed with prejudice Caldwell's claims against Western. (Doc. 50.) Caldwell's only remaining claim is his ERISA claim against LINA to recover benefits allegedly owed to him under an employee benefit plan.

14. On April 12, 1995, Caldwell filed a status report, stating that his claim still was under consideration and that he did not know whether LINA had admitted or denied his claim. (Doc. 51.)

15. On April 28, 1995, the court ordered LINA to show cause in writing by May 8, 1995 why Caldwell's administrative remedies should not be deemed exhausted and the stay lifted. (Doc. 52.)

16. On May 8, 1995, LINA filed two pleadings, a motion to stay proceedings for completion of administrative review and a response to the order to show cause. LINA filed a motion to stay proceedings for an additional sixty days "to complete its initial claim determination of Plaintiff's claim for benefits." (Doc. 54, at 1). In that motion, LINA explicitly stated, "The initial claim determination has not been completed." (Doc. 54, at 2.) In its response to the court's show cause order, LINA stated that the "court should not deem the plaintiff's administrative remedies under the Plan exhausted and the claim denied" and that the "[p]laintiff has agreed that the initial claim determination is not complete." (Doc. 55, at 1, 4.) A determination had not yet been made, according to LINA, because it was awaiting requested medical and employment evidence. In both pleadings, LINA commented: "ERISA contemplates delays as experienced by LINA. 29 C.F.R. § 2560.503[-1](h) allows 120 days for a **review** *after a claim denial.* Here, the claim has not yet been denied." (Doc. 54, at 2–3; Doc. 55, at 3–4) (emphasis in original).

17. On May 19, 1995, the court entered an order accepting LINA's response to the show cause order and stayed proceedings "until July 17, 1995, to give the defendant an opportunity to complete its initial claim determination." (Doc. 57.)

18. On July 21, 1995, because no information from either party had been received regarding the status of Caldwell's claim for benefits, the court deemed that Caldwell had exhausted his administrative remedies and reinstated proceedings. The court referred the case to Magistrate Judge Rushfelt for further scheduling and preparation of a pretrial order. (Doc. 60.)

19. On July 25, 1995, LINA sent a letter to Caldwell denying his claim. According to LINA, the letter served as LINA's "first consideration of the claim *and* review" under ERISA. (Claim File, Ex. 400, at 11–12.)

20. On March 27, 1996, Magistrate Judge Rushfelt partially granted LINA's motion for a protective order. *Caldwell v. Life Ins. Co. of N.A.,* 165 F.R.D. 633 (D.Kan.1996).

21. On August 23, 1996, at the conclusion of the bench trial, the court took the case under advisement.

## II. Conclusions of Law

Caldwell sues to recover disability benefits allegedly due him under LINA's group

disability insurance policy, which is an employee welfare benefit plan governed by ERISA. *See Caldwell,* 871 F.Supp. at 1395–96; *see also* 29 U.S.C. § 1002(1); *Chiles v. Ceridian Corp.,* 95 F.3d 1505, 1510 (10th Cir.1996)(disability insurance plan is considered an employee welfare benefit plan). ERISA permits plan participants to sue to recover benefits due under an employee welfare benefit plan. 29 U.S.C. § 1132(a)(1)(B). The court has subject matter jurisdiction over this action. 29 U.S.C. §§ 1132(e), (f).

## A. Standard of Review

ERISA does not provide an express standard of review for courts to apply in a benefits dispute brought pursuant to 29 U.S.C. § 1132(a)(1)(B). In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the United States Supreme Court held that the language of the plan determines the standard of review. If the plan grants no discretion to the administrator or fiduciary to construe plan terms or determine eligibility, a de novo standard applies. *Id.* at 113–16, 109 S.Ct. at 956–57. If, however, the plan bestows discretion to construe plan terms or determine eligibility, an arbitrary and capricious standard applies. *Id.; see also Millensifer v. Retirement Plan for Salaried Employees of Cotter Corp.,* 968 F.2d 1005, 1009 (10th Cir.1992); *Woolsey v. Marion Labs., Inc.,* 934 F.2d 1452, 1456–57 (10th Cir.1991); *Pratt v. Petroleum Prod. Management, Inc. Employee Sav. Plan & Trust,* 920 F.2d 651, 657 (10th Cir.1990). Although a plan must impart "discretionary authority 'in specific words,'" no specific terminology (such as "construe," "interpret," "deference," or "discretion") is required. *Torre v. Federated Mut. Ins. Co.,* 854 F.Supp. 790, 813 (D.Kan.1994) (quoting *Bass v. Prudential Ins. Co.,* 764 F.Supp. 1436, 1439 (D.Kan.1991)), *overruled on other grounds, Chambers v. Family Health Plan Corp.,* 100 F.3d· 818, 826 (10th Cir.1996). If the entire document apparently empowers the administrator to resolve disputes concerning benefits, the court applies the deferential standard. *Gust v. Coleman Co., Inc.,* 740 F.Supp. 1544, 1550 (D.Kan.1990), *aff'd,* 936 F.2d 583 (10th Cir.1991)(table).

LINA relies upon the following plan language to support application of an arbitrary and capricious standard of review:

The Insurance Company will begin paying Monthly Benefits in amounts determined from the Schedule when it receives *due proof* that:'

(1) the Employee becomes Totally Disabled while insured for this Long Term Disability Insurance; and

(2) his Total Disability has continued for a period longer than the Benefit Waiting Period shown in the Schedule.

(Def.'s Tr. Ex. 402, at 247)(emphasis added). LINA equates the phrase "due proof" with the phrase "satisfactory proof," which has been found to convey discretionary authority. *See Yeager v. Reliance Standard Life Ins. Co.,* 88 F.3d 376, 380–81 (6th Cir.1996) (plan required claimant to submit "satisfactory proof of Total Disability to us"). Courts also have found the words "due proof" or simply "proof" to convey discretionary authority. *See Patterson v. Caterpillar, Inc.,* 70 F.3d 503, 505 (7th Cir.1995) ("benefits will be payable only upon receipt by the Insurance Carrier or Company of such notice and such due proof, as shall be from time to time required, of such disability"); *Bollenbacher v. Helena Chemical Co.,* 926 F.Supp. 781, 786 (N.D.Ind.1996)("benefits will be paid '[w]hen the Company receives proof that the individual is disabled due to sickness or injury and requires regular attendance of a physician' ").

> A plan administrator that requests "proof" of a claimant's disability must out of necessity examine the evidence submitted by the claimant to determine whether or not it amounts to "proof" of the alleged disability.... In short, plan language which requires a claimant to submit "proof" of a claim does, by its very nature, grant discretion to the plan administrator to determine eligibility for benefits.

*Bollenbacher,* 926 F.Supp. at 787. The court finds this reasoning persuasive and will apply the arbitrary and capricious standard.

Caldwell argues that even if the court finds the arbitrary and capricious standard applicable, the court should distinguish between plan interpretation and factual determinations. The plaintiff contends that issues involving factual determinations require a de novo review, particularly because LINA as administrator had a conflict of interest. *See*

*Leahy v. The Bon, Inc.,* 801 F.Supp. 529 (D.Utah 1992).

■ Some courts have applied differing standards of review to factual determinations and plan interpretations. This has occurred in cases in which courts have questioned the appropriateness of reviewing the factual findings de novo.[1] De novo review applies only if the plan does not impart discretion. Caldwell's argument is not persuasive inasmuch as the plan granted LINA discretionary authority to determine benefits.

■ If the plan imparts discretion, a potential conflict-of-interest issue is germane. *Hammers v. Aetna Life Ins. Co.,* 925 F.Supp. 718, 722 (D.Kan.1996). "Decisions made by the issuing company on behalf of a plan based on a contract of insurance ... inherently implicate the hobgoblin of self-interest. Adverse benefits determinations save considerable sums that are returned to the fiduciary's corporate coffers." *Torre,* 854 F.Supp. at 814 (quoting *Brown v. Blue Cross & Blue Shield,* 898 F.2d 1556, 1568 (11th Cir.1990)); *see Hammers,* 925 F.Supp. at 722 ("There is a conflict of interest inherent in the situation in which an insurance company both issued the policy and is charged with the responsibility of administering an ERISA plan consisting of that policy."). The court agrees that LINA as policy issuer and plan administrator has a conflict of interest.

The *Bruch* Court, in dictum, briefly touched upon the impact of a conflict of interest on the reviewing standard, stating: "Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'"[2] 489 U.S. at 115, 109 S.Ct. at 956 (quoting

Restatement (Second) of Trusts § 187, cmt. d (1959)). Since *Bruch,* "all of the circuit courts agree that a conflict of interest triggers a less deferential standard of review." *Chambers v. Family Health Plan Corp.,* 100 F.3d 818, 825 (1996).

■ The Tenth Circuit has adopted the "sliding scale" approach. *Id.* at 826. "Under this approach, the reviewing court will always apply an arbitrary and capricious standard, but the court must decrease the level of deference given to the conflicted administrator's decision in proportion to the seriousness of the conflict." *Id.* at 825. In other words,

"[t]o the extent that [LINA] has discretion to avoid paying claims, it thereby promotes the potential for its own profit. ... In short, [LINA's] decision will be entitled to some deference, but [this] deference will be lessened to the degree necessary to neutralize any untoward influence resulting from the conflict.'"

*Id.* at 826 (quoting *Pitman v. Blue Cross & Blue Shield,* 24 F.3d 118, 123 (10th Cir.1994)(quoting *Doe v. Group Hospitalization & Medical Servs.,* 3 F.3d 80, 86 (4th Cir.1993))).

Before reviewing LINA's decision to deny benefits to Caldwell, the court will address other arguments raised at trial and in the trial briefs. LINA argues that the court need not review the benefit denial decision because Caldwell's application for benefits was not timely. The plaintiff contends that the court should not address LINA's decision to deny benefits because the defendant never gave a full and fair review to his claim.

---

1. Because the *Bruch* case involved only plan interpretation, some circuits have limited the *Bruch* de novo review standard to plan interpretations. In those cases, the courts reviewed the plan administrator's factual findings under a deferential standard. *See, e.g., Cox v. Mid–America Dairymen, Inc.,* 965 F.2d 569, 571 n. 2 (8th Cir.1992); *Pierre v. Connecticut Gen. Life Ins. Co.,* 932 F.2d 1552, 1557–58 (5th Cir.1991). Other circuits have concluded that the *Bruch* de novo review standard applies both to factual findings and to plan interpretations. *See, e.g., Luby v. Teamsters Health, Welfare & Pension Trust Funds,* 944 F.2d 1176, 1183 (3d Cir.1991);

*Petrilli v. Drechsel,* 910 F.2d 1441, 1446–47 (7th Cir.1990) (dicta). The Tenth Circuit has not addressed the issue.

2. Although the Tenth Circuit consistently has stated the applicable standard is "arbitrary and capricious" rather than "abuse of discretion," the court of appeals considers the different terminology a " 'distinction without a difference.'" *Chambers v. Family Health Plan Corp.,* 100 F.3d 818, 825 n. 1 (1996)(quoting *Cox v. Mid–America Dairymen, Inc.,* 965 F.2d 569, 572 n. 3 (8th Cir.1992)).

## B. Timely Application for Benefits

■ LINA asserts two reasons why Caldwell's application for benefits was not timely. The defendant first argues that the Kansas five-year statute of limitations for actions upon written contracts, K.S.A. § 60–511, bars Caldwell's claim. LINA relies upon the fact that more than five years had passed between the onset of the plaintiff's alleged disability on January 31, 1989 and his notice of claim to LINA dated April 25, 1994.

■ K.S.A. § 60–511 is the appropriate statute of limitations for ERISA claims brought pursuant to 29 U.S.C. § 1132. *See Columbian Fin. Corp. v. Businessmen's Assurance Co.*, 743 F.Supp. 772, 775 (D.Kan.1990)(because 29 U.S.C. § 1132 contains no statutory limitation period, courts generally have applied state statutes of limitations for actions upon written contracts), *rev'd on other grounds*, 956 F.2d 227 (11th Cir.1992)(Table). An ERISA cause of action, however, does not accrue until an application for benefits has been denied. *Held v. Manufacturers Hanover Leasing Corp.*, 912 F.2d 1197, 1205–06 (10th Cir.1990). Because the accrual date is not the alleged onset of disability, K.S.A. § 60–511 does not bar Caldwell's claim. The plaintiff filed suit prior to LINA's denial of his claim.

LINA should be aware its statute of limitations argument will fail. Similar language concerning the accrual time for an ERISA cause of action is contained expressly in the court's December 13, 1994 memorandum and order granting LINA's motion to stay proceedings. *Caldwell*, 871 F.Supp. at 1396.

■ LINA also contends that Caldwell's application for disability benefits was untimely under the provisions of the plan. The defendant purports to quote a "proof of loss" provision requiring a claimant to submit proof of loss to the insurance company within 90 days of the injury for which the claimant seeks benefits. LINA claims it is justified in denying benefits based upon the prejudice it suffered by Caldwell's five-year delay in filing proof of a claim. *See Christie v. K–Mart Corp. Employees Retirement Pension Plan*, 784 F.Supp. 796, 806–07 (D.Kan.1992); *see also Reid v. Connecticut Gen. Life Ins. Co.*, 17 F.3d 1092 (8th Cir.1994).

There are numerous problems with LINA's contention. First, the "proof of loss" provision is not part of the copy of the plan provided to the court. (See Def.'s Tr. Ex. 402.) Additionally, in contrast to *Christie*, LINA's July 25, 1995 letter denying benefits is not based upon Caldwell's delay in submitting his claim. Finally, LINA's reliance upon *Reid* is puzzling in that the *Reid* court applied Missouri law, under which "[p]rejudice is not presumed from mere delay in giving notice." 17 F.3d at 1098.

## C. Full and Fair Review

■ Caldwell argues that he did not receive a full and fair review of LINA's decision to deny disability benefits. ERISA mandates that certain procedural steps be followed if a plan denies benefits.

In accordance with regulations of the Secretary, every employee benefit plan shall—

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133; *see Bass v. Prudential Ins. Co.*, 764 F.Supp. 1436, 1441 (D.Kan.1991) (citing 29 C.F.R. §§ 2560.503–1(c) & (f))("Regulations promulgated by the Secretary of Labor make section [1133] applicable to insurance companies that process claims for benefits under employee benefit plans."), *overruled on other grounds, Chambers*, 100 F.3d at 826. The Tenth Circuit has held that a reasonable opportunity for a full and fair review requires "knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of the evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision." *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 382 (10th Cir.1992)(internal quotation marks and citations omitted).

Additionally, the Tenth Circuit has required substantial compliance with 29 C.F.R. § 2560.503–1(f) (1996), which charges the plan administrator with setting forth in writing:

>	(1) The specific reason or reasons for the denial;

>	(2) Specific reference to pertinent plan provisions on which the denial is based;

>	(3) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and

>	(4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.

*Sage v. Automation, Inc. Pension Plan & Trust,* 845 F.2d 885, 892–94 (10th Cir.1988).

Caldwell asserts that LINA never provided him with any review. The plaintiff relies upon LINA's July 25, 1995 letter denying his claim, in which LINA stated that the letter served as LINA's "first consideration of the claim *and* review" under ERISA. (Def.'s Tr. Ex. 400, at 2–3) Caldwell acknowledges that the court's December 13, 1994 memorandum and order stated that his "request for review of his claim will be deemed filed as of the date of the entry of this order." *Caldwell,* 871 F.Supp. at 1397. The plaintiff, however, also cites a subsequent court order dated May 19, 1995, in which the court extended the stay "until July 17, 1995, to give the defendant an opportunity to complete its *initial* claim determination." (Doc. 57) (emphasis by plaintiff).

According to Caldwell's construction of the events, he had a contemporaneous claim denial and review, which the regulations do not contemplate. *See* 29 C.F.R. § 2560.503–1(e)(2) (1996) ("If notice of the denial of a claim is not furnished in accordance with . . . this section within a reasonable period of time, the claim shall be deemed denied and the claimant shall be permitted to proceed to the review stage . . . ."); 29 C.F.R. § 2560.503–1(g)(1)(1996)("every plan shall establish and maintain a procedure by which a claimant . . . has a reasonable opportunity to appeal a denied claim . . . and under which a full and fair review of the claim and its denial may be obtained."); *id.* § 2560.503–1(g)(3) ("A plan may establish a limited period within which a claimant must file any request for review of a denied claim. . . . In no event may such a period expire less than 60 days after receipt by the claimant of written notification of denial of a claim.").

The plaintiff points out that LINA evidently contemplated giving him an opportunity for review, but decided against it. The plaintiff compares a draft of LINA's July 25 denial letter (Def.'s Tr. Ex. 400, at 5–6) with the letter he actually received (Def.'s Tr. Ex. 400, at 11–12). In the draft, LINA stated it was denying Caldwell's claim and set forth the procedures for requesting a review.

The plaintiff asserts he could not request a full and fair review prior to receiving LINA's July 25 letter because (1) he did not know LINA had denied his claim and the specific reasons for the denial and (2) he did not know what additional information was needed to perfect his claim. Caldwell contends that, thereafter, he was thwarted in his attempts to supply missing information. Specifically, he professes that he was denied the opportunity to present evidence from the following doctors: Lenz, White, Smith, Moore, Cruse, and Rutledge. Caldwell maintains that LINA refused to accept additional evidence after July 25. Additionally, he avers that Magistrate Judge Rushfelt's issuance of a protective order on March 27, 1996, precluded him from obtaining necessary information. *See Caldwell,* 165 F.R.D. at 637–38. Caldwell asks the court to remand the case to the plan administrator for a full and fair review.[3]

LINA disputes that Caldwell did not receive a full and fair review of his disability claim. First, the defendant challenges the plaintiff's assertion that he did not know LINA had denied his claim, emphasizing that the court's December 13, 1994 order served

---

3.	Caldwell alleges that, after July 25, 1995, he sent several letters to LINA requesting a review of the denial of his disability claim. Those letters are not part of the evidence admitted at trial.

The court previously resolved the scope of the record on judicial review by granting LINA's motion in limine to limit the evidence to the record before the administrator.

as the initial denial of Caldwell's disability claim. *See Caldwell,* 871 F.Supp. at 1397; *see also* 29 C.F.R. § 2560.503–1(e)(2) (1996) ("If notice of the denial is not furnished … within a reasonable period of time, the claim shall be deemed denied and the claimant shall be permitted to proceed to the review stage.").

LINA also contests Caldwell's assertion that he did not know the specific reasons for the denial or what additional information was needed to perfect his claim. The defendant alleges that prior to the court's December 13, 1994 order, the defendant "reviewed" Caldwell's disability claim, "determined" that he had not presented sufficient medical evidence to support his claim, and so notified the plaintiff. LINA relies upon two October 1994 letters, in which the defendant requested additional medical and employment information. After December 13, 1994 and during the spring of 1995, LINA sent five additional letters requesting medical information.

The problem with LINA's argument is that LINA's actions have not been consistent. The five letters sent after the court's December 13, 1994 order, in which Caldwell's disability claim was deemed denied, apprise the plaintiff of the information LINA warranted necessary to evaluate his claim, not the defendant's basis for denying his claim. Moreover, in the two pleadings filed May 8, 1995, LINA repeatedly emphasized that it had not completed its initial claim determination and that Caldwell's claim had yet to be denied. It was upon LINA's request that the court's May 19, 1995 order stayed proceedings to allow the defendant time to complete its initial determination of Caldwell's disability claim. The May 19 order essentially revoked the court's earlier order deeming the claim denied.[4]

Based upon LINA's inconsistent posturing and factoring in its conflict of interest, the court is not convinced, even under a deferential standard of review, that Caldwell's disability claim has received a full and fair review. Because the plaintiff's claim never received a full and fair administrative review, the claim is not ripe for judicial review. The case is remanded for further proceedings.[5]

The court establishes the following schedule for the review on remand: LINA shall notify Caldwell in writing of its review procedure within 10 days of the date of this order. Unless special circumstances exist, Caldwell shall submit any new information concerning his disability claim to LINA within 50 days of the date of this order, and LINA shall send Caldwell written notification of its decision on review within 60 days of the date of this order. If special circumstances require additional time, Caldwell has 100 days from the day of this order to submit new information, and LINA has 120 days from the date of this order in which to notify Caldwell of its decision. *See* 29 C.F.R. § 2560.503–1(h)(1996).

IT IS, THEREFORE, BY THE COURT ORDERED that the case is remanded to LINA as the ERISA plan administrator to afford Caldwell a full and fair review of its denial of his disability claim.

IT IS FURTHER ORDERED that the parties comply with the review schedule as set forth in this opinion.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**

---

**4.** LINA does not rely upon the court's July 21, 1996 order, in which LINA's failure to respond timely prompted the court once again to deem Caldwell's administrative remedies exhausted. LINA apparently surmised that its inaction does not bolster its position. The court agrees. The purpose of the court's order was to instigate action and not to excuse LINA's failure to provide a substantive administrative review of Caldwell's claim.

**5.** Caldwell would do well to remember that he bears the burden of proving his eligibility for disability benefits. *See Smith v. Commonwealth Edison Mut. Benefit Ass'n,* 1987 WL 5697, at n. 3 (N.D.Ill. Jan.21, 1987); *see also Torix v. Ball Corp.,* 862 F.2d 1428 (10th Cir.1988).