Eva C. RILEY, Plaintiff,

v.

**UNUM LIFE INSURANCE COMPANY OF AMERICA, Defendant.**

No. 97–1486–WEB.

United States District Court, D. Kansas.

Nov. 4, 1998.

Jack R. Shelton, Wichita, KS, for Eva C. Riley.

Lynn D. Preheim, Van M. Halley, Morrison & Hecker L.L.P., Wichita, KS, for Unum Life Ins. Co. of America.

### Memorandum and Order

WESLEY E. BROWN, Senior District Judge.

This matter is before the court on defendant UNUM's motion for judgment on the administrative record. (Doc. 22). The dispute concerns UNUM's termination of disability benefits to plaintiff Eva Riley under an insurance policy issued by UNUM. UNUM discontinued benefits after determining that Mrs. Riley no longer met the definition of disabled under the policy. The court finds that oral argument would not assist in deciding the issues presented.

The group disability plan under which plaintiff was insured is an employee welfare benefit plan governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq. Plaintiff's complaint constitutes a claim for benefits under 29 U.S.C. § 1132(a)(1)(B). The court has jurisdiction over the complaint pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

The standards and procedures for summary judgment are well established and will not be fully repeated here. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In essence, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.* For purposes of summary judgment the court finds no genuine dispute as to the following facts.

### I. *Facts.*

Plaintiff Eva Riley had three lumbar laminectomies performed in 1979 and a spinal fusion on her lumbar spine in 1980. She had an anterior cervical fusion done in 1988 and a left femoral anthroplasty in 1991.

Mrs. Riley was injured in an automobile accident on October 13, 1993. At the time of her injury, she was employed as an actuator/assembler for Vickers, Inc., and was insured under a long-term disability policy issued to Vickers by defendant UNUM.

As it pertains to this case, the policy in question defined "disability" and "disabled" to mean that "because of injury or sickness:

a. the insured cannot perform each of the material duties of [her] regular occupation; and

b. after benefits have been paid for 24 months, the insured cannot perform each of the material duties of any gainful occupation for which [she] is reasonably fitted by training, education, or experience; ..."

Payment of benefits under the policy was conditioned upon plaintiff meeting the requirements of disability and being regularly attended by a physician. The policy provided:

> When the Company receives proof that an insured is disabled due to sickness or injury and requires the regular attendance of a physician, the Company will pay the insured a monthly benefit after the end of the elimination period. The benefit will be paid for the period of disability if the insured gives to the Company proof of continued:
>
> 1. disability; and
> 2. regular attendance of a physician.
>
> The proof must be given upon request and at the insured's expense.

The Plan also provides that disability benefits will cease on "the date the insured is no longer disabled," if other specified events do not terminate benefits at an earlier date.

Plaintiff's original request for UNUM disability benefits was approved and Mrs. Riley was so notified in a letter dated June 3, 1994. Payments for plaintiff's disability were made retroactively for a period beginning April 12, 1994.

According to UNUM's records summarizing plaintiff's medical history, an MRI on plaintiff in May of 1995 revealed a disc herniation L1–L2 with bulging towards the neural foramen and complete spine collapse at L3–L4. On May 20, 1995, plaintiff underwent a partial laminectomy/diskectomy of L1–L2 and L3–L4. She did well post operatively until September of 1995 when she had a recurrence of pain thought to be due to sacroilitis.

A letter received by UNUM dated January 29, 1996, from Dr. Michael P. Estivo indicated that as of 9/14/95 plaintiff had been released from his care. It stated that Mrs. Riley continued to complain of increases in low back pain in the two weeks before her last appointment (9/14/95) and that she was to continue home exercises for the next two months, but was otherwise released without restrictions.

On or about February 27, 1996, a UNUM employee called for the plaintiff and spoke to her husband. Mr. Riley told the employee that plaintiff's physician, Dr. Kirkpatrick, said that plaintiff needed a neck operation.

The employee told Mr. Riley to have plaintiff call UNUM the next day. Plaintiff did so and spoke to a UNUM employee. Mrs. Riley said that she had been to see Dr. Kirkpatrick and that he found two ruptured disks in her neck and had referred her to another surgeon. She said that she had been having problems with her neck all along, and that she had been doing some housework one day when her arms started to hurt so badly that she couldn't even pick up a cup of coffee. Mrs. Riley indicated that she was scheduled to see a doctor the next day. The UNUM employee told Riley to have the doctor send a report of her current restrictions and limitations as well as any other information concerning her current condition within thirty days.

In a March 7, 1996, letter that plaintiff caused to be sent to UNUM, Dr. Estivo modified plaintiff's restrictions to preclude lifting more than twenty pounds and more than five pounds at shoulder level or above. The letter reflected a diagnosis of a herniated cervical disk.

In a letter dated April 5, 1996, after reviewing the additional information provided by plaintiff and after a vocational consultant determined that plaintiff was able to work, UNUM informed plaintiff that it was denying further disability benefits because it determined she no longer met the definition of "disabled" under the policy. UNUM provided a transitional benefit through May 12, 1996, and informed plaintiff of her right to a review of its decision.

UNUM's records show that a UNUM employee spoke to plaintiff on the phone on April 12 or April 15, 1996,[1] and that plaintiff indicated she had had back trouble and difficulty using her hands and that she was scheduled for surgery on April 29, 1996. UNUM's notes show that the employee told Mrs. Riley "send in new med ASAP after surgery & we will review." Doc. 24, Vol 2 at CL00126.

Plaintiff underwent neck surgery on April 26, 1996.

UNUM received a request for review from plaintiff on May 16, 1996, and subsequently received additional medical information from Mrs. Riley in her letter dated May 22, 1996, including an assessment from Dr. Estivo indicating that plaintiff was currently unable to work. After reviewing this information, UNUM upheld its decision to terminate disability benefits and so informed plaintiff in a letter dated June 5, 1996. UNUM indicated that Mrs. Riley had not met the definition of disabled as of April 12, 1996. The letter said that, "[i]n addition, the surgery you had was on 4/29/96 and was not scheduled when we originally spoke to you about your benefits ending on 4/12/96." Mrs. Riley's file was then forwarded to UNUM's Quality Review Unit for ERISA review on June 11, 1996.

In a medical review dated October 9, 1996, Dr. Herman of UNUM noted:

> These restrictions [by Dr. Estivo] seem quite reasonable and would apply until her surgery on April 25 1996 at which point she was totally disabled again. A reasonable estimate for recovery from a cervical laminectomy would be 12 to 16 weeks. Unfortunately we do not have much data as to the status of her neck pain after the surgical procedure. Once we obtain this information from her physician we can proceed further with work capacity determination.

UNUM advised plaintiff on December 6, 1996, that it would be willing to consider a compromise settlement of $2,000 for her claim. Plaintiff advised UNUM that she would consult her physician. After this, UNUM had no substantive correspondence with plaintiff until attorney Kurt A. Harper requested a copy of her claim file, which was provided on February 26, 1997.

After plaintiff's claim file was provided to her attorney, UNUM had no further correspondence with plaintiff until the Kansas Department of Insurance submitted a complaint on March 17, 1997. At that time, UNUM received no additional medical information provided with the complaint.

---

1. The record in question bears a date of 4/12/96, but it also indicates that the line was busy and that the UNUM employee "called back 4/15/96—spoke with Eva."

On May 13, 1997, pursuant to a review of plaintiff's claim, Dr. Herman spoke with plaintiff's treating physician, Dr. Jon Kirkpatrick. After doing so, Herman noted in a memorandum that "Kirkpatrick feels that she has the capacity to do full time sedentary work as long as she could change position on an 'as needed' basis." The May 13, 1997, memo was mailed to Dr. Kirkpatrick with a request for his review and additional comments. The memo also stated, "If you agree that this memo accurately reflects the content and conclusions of our conversation, please affix your signature to this letter in the space provided and return this letter to me by return mail or fax at your earliest convenience. If we have not heard from you within 7 days, we will assume you are in agreement with the contents of the note."

UNUM referred plaintiff's file to Robert Violetta, a vocational consultant, for him to determine if there were alternative occupations plaintiff could perform with the restrictions identified in the UNUM "OSP Review" dated 5/13/97, which summarized the phone call between UNUM and Dr. Kirkpatrick. Violetta determined on May 22, 1997, that plaintiff could work, including the jobs of instrument assembler, electrical-control assembler, assembler-small products, gate/front desk attendant, parking garage cashier, and surveillance system monitor. UNUM did not provide plaintiff a copy of Mr. Violetta's report prior to this lawsuit.

Dr. Kirkpatrick returned UNUM's memo on May 29, 1997, with the handwritten comment, "Pt. [patient] states she is unable to sit for long periods d/t [due to] pain," followed by his signature. Dr. Kirkpatrick did not sign in the space provided by UNUM where he was told to sign if he agreed with the contents of the memo.

Plaintiff was notified by letter dated June 14, 1997, that UNUM's review concluded that she was entitled to 16 weeks worth of benefits, due to recovery from her surgery of April 26, 1996. UNUM concluded that plaintiff was not entitled to further benefits because she was not precluded from working "in any gainful occupation."

## II. Standard of Review.

A denial of benefits challenged under § 1132(a)(1)(B) is reviewed by the court under a de novo standard unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The plan in this case essentially provides that UNUM will pay disability benefits if the claimant provides proof to UNUM that she is disabled. The courts are divided on whether this particular language confers discretion such that it results in a deferential standard of review. *E.g., compare Tavares v. UNUM Corp.*, No. 96–614L, 1998 WL 566012 (D.R.I. Sept.2, 1998) (applying de novo standard) and *Williamson v. Unum Life Ins. Co.*, 943 F.Supp. 1226 (C.D.Cal. 1996) (same) *with Lefebvre v. Ivex Pack. Corp.*, No. 97–4411, 1998 WL 325258 (N.D.Ill., June 11, 1998) (reviewing determination under arbitrary or capricious standard) and *Bollenbacher v. Helena Chem. Co.*, 926 F.Supp. 781 (N.D.Ind.1996) (same).

In *Caldwell v. Life Ins. Co. of North America*, 959 F.Supp. 1361 (D.Kan.1997), Judge Van Bebber found that a plan requiring the claimant to provide "due proof" of disability should be reviewed under an arbitrary and capricious standard. *Id.* at 1365. He indicated that when a plan requires a claimant to submit "proof" to the administrator, it necessarily grants discretion to the administrator to determine eligibility for benefits and thereby triggers a deferential standard of review. *Id.*

The reasoning of *Caldwell* applies with equal force here. In fact, *Caldwell* relied upon a case involving the same language at issue here. *Id.* at 1365 (*citing Bollenbacher v. Helena Chem. Co.*, 926 F.Supp. 781 (N.D.Ind.1996)). Accordingly, the court will apply the arbitrary and capricious (or "abuse of discretion")[2] standard of review. At the

---

2. Plaintiff appears to concede that the arbitrary and capricious standard applies in this case. *See* Pl. Resp. at 7.

same time, the court recognizes that UNUM is the insurer of the plan and therefore has a conflict of interest in making eligibility determinations. *See Hammers v. Aetna Life Ins. Co.,* 925 F.Supp. 718, 722 (D.Kan.1996) (there is an inherent conflict of interest where the insurance company issued the policy and is responsible for administering the plan). This conflict must be weighed as a factor in determining whether UNUM abused its discretion under the plan. *See Firestone,* 489 U.S. at 115, 109 S.Ct. 948. Since *Firestone,* "all of the circuit courts agree that a conflict of interest triggers a less deferential standard of review." *Chambers v. Family Health Plan Corp.,* 100 F.3d 818, 825 (10th Cir.1996).

III. *Discussion.*

■ UNUM argues that its denial of benefits was not arbitrary and capricious. It contends the evidence showed that Mrs. Riley was no longer disabled as of April 12, 1996, and argues her eligibility for benefits ceased as of that date. As such, UNUM contends, plaintiff's condition after April 12, 1996, is not relevant to the determination. In support of this argument UNUM cites Dr. Estivo's release letter of January 1996 and his modified restrictions of March 7, 1996. UNUM argues that in light of these restrictions it had a proper basis for determining Mrs. Riley was capable of performing sedentary work as of April 12, 1996.

The court cannot accept this argument. UNUM was aware before it terminated benefits that plaintiff had been seeing Dr. Kirkpatrick, that he had diagnosed two ruptured cervical disks, and that he had recommended plaintiff have surgery. It also knew that plaintiff was complaining of disabling neck pain. Under the circumstances, a current medical assessment of plaintiff's condition as of April 12, 1996, would have required the input of Dr. Kirkpatrick or some other physician familiar with plaintiff's current symptoms and it would have required some assessment of the extent of Mrs. Riley's pain. It is not clear from the records before UNUM that Dr. Estivo's restrictions of March 7, 1996, took all of these factors into account. Moreover, although UNUM now argues that April 12, 1996 was a "cutoff date"

beyond which Mrs. Riley's condition was irrelevant, it did not take this approach in handling Mrs. Riley's claim and in communicating with her. UNUM's records show that when the plaintiff discussed her upcoming surgery with a UNUM employee, she was told to send in the records after surgery and that UNUM would review them. Also, UNUM's final review of plaintiff's claim suggests that UNUM concluded plaintiff may have been disabled until after her neck surgery: "Since your surgery was close in time to when benefits were terminated it was determined that it would be reasonable that you may have been precluded from working until after your surgery was completed." Def. Vol 2 at CL00021. Under the circumstances, the court concludes that the termination of plaintiff's benefits on April 12, 1996, based upon Dr. Estivo's evaluation was arbitrary and capricious.

In view of this finding, the court must determine whether UNUM's decision to terminate plaintiff's disability benefits 16 weeks after her neck surgery was arbitrary or capricious. The primary medical evidence underlying this determination was Dr. Kirkpatrick's alleged confirmation in May of 1997 that plaintiff was able to do sedentary work. Def. Mem. at 12. This purported confirmation, however, was ambiguous. While UNUM chose to interpret Dr. Kirkpatrick's response as an endorsement of the contents of UNUM's memo, that was questionable in view of the fact that he did not sign the memo in the space provided by UNUM and he added a comment that Mrs. Riley was complaining of being unable to sit for long periods due to pain. This could be construed as an indication that Dr. Kirkpatrick had some disagreement with the contents of the memo. Moreover, the memo was ambiguous as to whether Dr. Kirkpatrick's alleged assessment of Mrs. Riley pertained to her status in June of 1996 or in May of 1997. Given UNUM's conflict of interest as the insurer of the plan, the court concludes it was an abuse of discretion for UNUM to interpret this ambiguous response as confirmation by Dr. Kirkpatrick that plaintiff was no longer disabled. The basis cited by UNUM for terminating Mrs. Riley's benefits after the 16

week period was thus inadequate to support the determination.

In her memorandum in opposition to UNUM's motion for judgment, plaintiff argues that UNUM did not give her an adequate opportunity to address this evidence. She contends that if she had been given that opportunity she would have obtained limitations and restrictions from her treating physician, followed by an evaluation by her own vocational expert. Under the circumstances, the court agrees that plaintiff is entitled to further review of her claim by UNUM. The court considers plaintiff's opposition memorandum as a motion to remand the matter to UNUM for reconsideration and review of Mrs. Riley's claim. As part of that review, plaintiff should be given an opportunity to present evidence to rebut or to explain the alleged confirmation by Dr. Kirkpatrick that she was able to work following the 16 week recovery period allotted by UNUM or thereafter. She should also have the opportunity to present an evaluation by her own vocational expert.

IV. *Conclusion.*

Defendant UNUM's Motion for Judgment on the Administrative Record (Doc. 22) is DENIED.

Plaintiff's Response (Doc. 26) is considered as a motion to remand the matter to UNUM for reconsideration and further review of plaintiff's claim and is hereby GRANTED. The court directs UNUM to reconsider plaintiff's claim in accordance with applicable regulations and the procedures provided by the plan. If UNUM determines after reconsideration that the claim should be denied, it shall notify plaintiff of the basis for its decision and of her right to review pursuant to 29 C.F.R. § 2560.505-1 or other applicable provisions.

IT IS SO ORDERED.