Rufus A. CALDWELL, III, Plaintiff,

v.

LIFE INSURANCE COMPANY OF NORTH AMERICA, Defendant.

No. Civ.A. 93–2550–GTV.

United States District Court, D. Kansas.

Dec. 16, 1998.

William P. Ronan, Cloon, Bennett & Ronan, Overland Park, KS, for Rufus A Caldwell, III, plaintiff.

Richard N. Bien, James A. Durbin, Swanson, Midgley, Gangwere, Kitchin & McLarney, LLC, Kansas City, MO, Craig T. Kenworthy, Swanson, Midgley, Gangwere, Kitchin & McLarney, LLC, Overland Park, KS, for Life Insurance Company of North America, defendant.

### MEMORANDUM ORDER

VANBEBBER, District Judge.

Plaintiff Rufus Caldwell filed this suit seeking review of the denial of his claim for disability benefits by defendant Life Insurance Company of North America ("LINA") pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* *The case is before the court on the parties' cross-motions for summary judgment (Docs. 120 & 126).*

After examining the parties' summary judgment papers and the record before the plan administrator ("administrative record"), the court reverses defendant's determination that plaintiff was not entitled to benefits for the period beginning January 31, 1989 and ending January 31, 1991, and affirms defendant's determination that plaintiff was not entitled to benefits after January 31, 1991.

### I. Procedural Issues

#### A. Standard of Review

■ As the court previously determined in a Memorandum and Order dated March 7, 1997, the court will apply the "sliding scale" approach in reviewing defendant's decision to deny plaintiff long-term disability benefits. *See Caldwell v. Life Ins. Co. of N. Am.*, 959 F.Supp. 1361, 1365–66 (D.Kan.1997). "Under this approach, the reviewing court will always apply an arbitrary and capricious standard, but the court must decrease the level of deference given to the conflicted administrator's decision in proportion to the seriousness of the conflict." *Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 825 (10th Cir. 1996). In this case, LINA's decision will be entitled to some deference, but the deference will be lessened to the degree necessary to neutralize any untoward influence resulting from the conflict. *See id.* at 826.

■ The court must determine whether defendant's denial of benefits was arbitrary and capricious. "Indicia of arbitrary and capricious actions include a lack of substantial evidence, a mistake of law, and bad faith." *Buchanan v. Reliance Standard Life Ins. Co.*, 5 F.Supp.2d 1172, 1180 (D.Kan.1998) (citing *Sandoval v. Aetna Life & Casualty Ins. Co.*, 967 F.2d 377, 380 n. 4 (10th Cir.1992)). A decision to deny benefits is not arbitrary and capricious if it is reached through a reasonable interpretation of the plan's terms. *See McGraw v. Prudential Ins. Co. of Am.*, 137 F.3d 1253, 1259 (10th Cir.1998). Therefore, "[t]he touchstone of [the court's] inquiry is whether defendant's interpretation of its plan is reasonable." *Semtner v. Group Health Serv. of Okla., Inc.*, 129 F.3d 1390, 1393 (10th Cir.1997).

#### B. Scope of Review

In its March 7, 1997 Memorandum and Order, the court determined that the evidence to be considered upon review is limited to the administrative record that was before the defendant when it made its decision to deny plaintiff's claim. *See Caldwell*, 959 F.Supp. at 1368 n. 3. Despite this ruling, plaintiff's summary judgment papers contained numerous references and citations to testimony contained in his November 20, 1991 deposition. This deposition was not produced by plaintiff and,

therefore, is not part of the administrative record. In response to plaintiff's attempt to expand the scope of admissible evidence before the court, defendant has filed a motion to renew the court's previous motion in limine (Doc. 136).

 The court concludes that plaintiff's deposition should not be considered because plaintiff failed to include it in the administrative record reviewed by defendant. Plaintiff had ample opportunity to supplement the administrative record in response to the court's March 7, 1997 order remanding the case to defendant for further review. Accordingly, the court will not consider the November 20, 1991 deposition in determining whether defendant's denial of plaintiff's claim was arbitrary and capricious. *See Sandoval*, 967 F.2d at 380 ("In determining whether the plan administrator's decision was arbitrary and capricious, the district court generally may consider only the arguments and evidence before the administrator at the time it made that decision.") Defendant's motion is limine (Doc. 136) is granted.

## C. Procedural Posture of the Case

 Both parties have filed motions for summary judgment in this case. Although the United States Court of Appeals for the Tenth Circuit has resolved ERISA suits in a summary judgment posture in the past, this court concludes that traditional summary judgment standards are not the proper means by which to review an ERISA plan administrator's denial of benefits under an arbitrary and capricious standard of review. *See Brooks v. Guardian Life Ins. Co.*, 995 F.Supp. 1174, 1176 (D.Kan.1998). In *Olenhouse v. Commodity Credit Corp.*, the Tenth Circuit held that motions for summary judgment are inconsistent with the standards for judicial review of actions in which the court is confined to the administrative record in its analysis. 42 F.3d 1560, 1579–80 (10th Cir. 1994) (Kane, J., sitting by designation). Although *Olenhouse* focused on the judicial review of administrative *agency* decisions, the court concludes that its reasoning is applicable to suits seeking review of the denial of ERISA benefits that are limited in their scope to the administrative record. Applying the *Olenhouse* analysis to ERISA cases with an arbitrary and capricious standard of review encourages courts to assess the record substantively and discourages them from relying on either the post hoc rationalizations of counsel or the court's own reasoning with a general disregard for the contents of the administrative record. *See Olenhouse*, 42 F.3d at 1580.

Because motions for summary judgment are inappropriate vehicles for resolving ERISA suits under an arbitrary and capricious standard, the court will not consider the traditional summary judgment standards and will treat the pending summary judgment motions as the briefs of the respective parties. In doing so, the court will base its conclusions on the standards governing this case and rely solely on the evidence contained in the administrative record.

## II. Administrative Record Factual Findings

The following facts are based exclusively on the administrative record submitted by the parties. Arguments not made and documents not submitted in the administrative review process are omitted.

From November 3, 1975 until April 28, 1989, plaintiff was employed by Western Atlas International ("Western Atlas") as a customer service representative. Although plaintiff's title was "customer service representative," plaintiff's duties included public relations, selling, acting as a rig hand, and serving as a relief engineer. A rig hand employed by Western Atlas was required to lift a variety of objects ranging from a thirty-pound logging tool to his share of a 450–pound perforating gun. The duties of a relief engineer did not entail any significant manual labor.

As an employee of Western Atlas, plaintiff was covered by a group long-term disability insurance policy issued by LINA

and sponsored by Western Atlas. Under the terms of the policy, LINA was required to pay total disability benefits to an employee for the first twenty-four months after sickness or injury if the employee is unable to "perform the essential duties of his occupation." After the initial twenty-four-month period, an employee's eligibility for total disability payments continues only if the employee is "unable to perform all the essential duties of any occupation for which he is or may reasonably become qualified based on his education, training or experience." The policy specifies that the monthly benefit is sixty percent of the employee's salary at the time of total disability offset by any other benefits received.

Under the policy, disability payments commence when LINA receives "due proof that: (1) the Employee [became] Totally Disabled while insured for this Long Term Disability Insurance; and (2) his Total Disability has continued for a period longer than the Benefit Waiting Period shown in the Schedule." The policy defines the benefit waiting period as ninety days of continuous total disability. Furthermore, the policy enumerates situations in which an employee's insurance coverage may terminate, including the earlier date of the following: the employee ceases to be an eligible employee or the employee ceases active service with the employer.

On January 31, 1989, during the course of his employment with Western Atlas, plaintiff suffered injuries when he tripped and fell to the ground while exiting his truck. Despite his injuries, plaintiff immediately returned to work, and remained employed by Western Atlas until he was laid off on April 28, 1989. On April 25, 1994, plaintiff submitted a claim to LINA seeking long-term disability benefits.[1] LINA denied this claim on July 25, 1995. After judicial review by this court, the case was remanded to LINA as the ERISA plan administrator to afford plaintiff a full and fair review of its denial of his disability claim.

Pursuant to the court's remand order, LINA instructed Ida Kung, a team leader at CIGNA/LINA, to seek additional information relevant to plaintiff's claim and to conduct a second review of plaintiff's case. According to her deposition, Kung accumulated approximately 850 additional pages of information, added these pages to the administrative record, and reviewed the entire 1,108–page record. Kung concluded that plaintiff was not totally disabled on either January 31, 1989, the date of his initial injury, or April 28, 1989, the date he was laid off by Western Atlas. Because Kung determined that plaintiff was never disabled while a Western Atlas employee, plaintiff was ineligible to recover any long-term disability benefits.

The relevant evidence in this case is best separated into four groups: the medical evidence, the evidence relating to plaintiff's workers' compensation claim, plaintiff's deposition testimony, and plaintiff's post-termination activities. The court will also set out any other relevant facts from the administrative record that bear upon the reasonableness of Kung's decision to deny plaintiff's claim.

### A. Medical Evidence

Doctors L.T. Fleske, Charles Crowell, Anthony Lenz, and John W. Ellis either treated plaintiff during the early part of 1989 or provided a medical opinion concerning plaintiff's ability to work during this period. Dr. Fleske treated plaintiff from February 8, 1989 to July 24, 1989. Dr. Fleske's records indicate that plaintiff suffered a severe sprain and possible chip fracture of his left ankle on January 31, 1989, and track his subsequent recovery. On February 8, 1989, plaintiff's ankle was

---

1. This law suit originated as a dispute between plaintiff and Western Atlas. On December 28, 1993, Caldwell filed suit against Western Atlas, alleging claims of breach of contract and retaliatory discharge. On April 25, 1994, plaintiff filed an Amended Complaint adding LINA as a defendant. On March 17, 1995, plaintiff's claims against Western Atlas were jointly dismissed by the parties.

placed in a short fiberglass cast. The cast was removed on February 20, 1989. By March 6, 1989, the swelling in plaintiff's ankle had decreased and plaintiff discontinued use of his crutches. On March 27, 1989, plaintiff's physical therapist, Teresa Malone, noted that plaintiff was ambulating without any assistive device. This was the last date plaintiff returned to Malone for physical therapy. On March 29, 1989, Dr. Fleske reported that plaintiff's range of motion had improved, his pain had decreased, but that he still had mild swelling. Records indicate that Dr. Fleske did not see plaintiff again until May 17, 1989. On that date, Dr. Fleske noted that plaintiff complained of ankle pain and the "[i]nversion and walking on an uneven surface causes the pain."

In his testimony at a workers' compensation hearing, Dr. Fleske verified the accuracy of the above-mentioned medical records. He also testified that plaintiff did not complain of injury to his neck or back during any of his medical visits. Finally, Dr. Fleske testified that he released plaintiff to return to work with no restrictions on March 29, 1989.

The record also contains the affidavit of Dr. Anthony Lenz. Through his affidavit, Dr. Lenz states the following: he was familiar with plaintiff's duties at Western Atlas as of January 31, 1989; plaintiff was totally disabled as of January 31, 1989; plaintiff remained totally disabled during the first twenty-four months after his injury; and after the first twenty-four months of disability, plaintiff was "unable to perform all of the essential duties of any job or occupation for which he is reasonably qualified by education, training or experience." When deposed, Dr. Lenz admitted that he had no specific recollection of treating plaintiff from January 1, 1989 to July 1, 1989, and that he is plaintiff's friend.

The administrative record also contains an affidavit signed by Dr. Charles Crowell, III. Dr. Crowell's affidavit is an exact copy of the Lenz affidavit with a different signature. At his deposition, Dr. Crowell admitted that the first time he treated plaintiff was in the fall of 1994, and that he knew little if anything about plaintiff's job duties when he signed the affidavit.

Plaintiff also submitted the medical opinion of Doctor John W. Ellis. On July 31, 1990, Dr. Ellis examined plaintiff and concluded that plaintiff's ankle, back, and neck injuries stemmed from the January 31, 1989 accident. Dr. Ellis ordered plaintiff to avoid prolonged standing or walking and not to lift more than twenty-five pounds.

### B. Claim for Workers' Compensation Benefits

On November 20, 1991, plaintiff was denied workers' compensation benefits from Administrative Law Judge Steven J. Howard. Judge Howard specifically found that plaintiff was never "totally disabled within the meaning of the Kansas Workers' Compensation Act." Judge Howard based his finding on the following:

Claimant testified that he was capable of performing the duties of a customer service representative prior to his termination or layoff with his former employer ... Based upon Claimant's unrefuted testimony ... Claimant's condition substantially worsened following his departure from his employment with [Western Atlas]. That worsening or deterioration of his condition was associated with his self-employment endeavors in Hot Shot Trucking ... Claimant sustained intervening accidents following his departure of employment with [Western Atlas], and those accidents occurred in a series of repetitive trauma while self-employed.

### C. Plaintiff's Testimony

In various depositions and hearings, plaintiff provided relevant testimony about his job duties and his physical ability to perform those duties. Plaintiff testified that, as a Western Atlas employee, he performed the duties of a customer service representative, a rig hand, and a relief

engineer. Although plaintiff acknowledged that, after his injury, he was able to drive a truck and perform the sedentary duties of a customer service representative, he testified that he was unable to perform the duties of a rig hand, which required the lifting of objects weighing twenty-five pounds or more and other manual labor.

### D. Post–Termination Activities

In September or October 1989, plaintiff started his own oil field hauling business. In running this business, plaintiff drove a one-ton truck and delivered equipment and supplies to various businesses located in Oklahoma and Kansas. In September 1990, plaintiff quit the oil field hauling business when he became physically unable to drive a truck for extended periods of time.

The administrative record also indicates that plaintiff was physically able to perform a variety of physical activities after he was terminated by Western Atlas. Plaintiff's medical records from Woodward Hospital in Woodward, Oklahoma indicate that, he sustained various minor injuries while sheet rocking at his home in January 1995, while performing "carpentry work" in December 1995, while "picking up some heavy material" in March 1996, and while moving "furniture around the house" in October 1996.

### III. Discussion

The terms of the long-term disability insurance policy required defendant to pay total disability benefits to an employee for the first twenty-four months after sickness or injury if the employee was unable "perform the essential duties of his occupation." Twenty-four months after the employee's injury, the employee's eligibility for total disability payments continued only if he was "unable to perform all the essential duties of any occupation for which he [was] qualified based on his education, training or experience." Plaintiff argues that he is eligible for long-term disability benefits because he was unable to perform all of the essential duties of his

Customer Service Representative position when he was injured on January 31, 1989, and when his employment was terminated by Western Atlas on April, 28, 1989. Plaintiff also contends that he continued to be eligible for disability benefits after the initial twenty-four month period because, under the terms of the insurance policy, he remained "totally disabled" after January 31, 1991.

After thoroughly reviewing the administrative record and applying a lessened level of deference to the decision of the plan administrator, the court concludes that plaintiff's injury on January 31, 1989 rendered him permanently unable to perform all the essential duties of his position at Western Atlas. However, the court also concludes that the administrative record does not support a finding that plaintiff was, at any time, "unable to perform all the essential duties of any occupation for which he [was] qualified based on his education, training or experience."

### A. Was plaintiff able to perform all the essential duties of his position?

 Under an arbitrary and capricious standard of review, the court will affirm a denial of benefits if it is supported by substantial evidence in the administrative record. See Olenhouse, 42 F.3d at 1580. "Substantial evidence" is more than a mere scintilla; "it must be such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court concludes that defendant's blanket denial of insurance benefits was not supported by substantial evidence in the administrative record and, therefore, was arbitrary and capricious.

Defendant based its denial of plaintiff's claim on the following:

1. Administrative Law Judge Steven J. Howard's findings and conclusions in plaintiff's workers' compensation hearing;

2. Administrative Law Judge John L. Burke's findings and conclusions re-

garding plaintiff's claim for Social Security benefits;

3. Doctor L.T. Fleske's testimony that plaintiff should not be permanently disabled and that plaintiff was able to return to work without restrictions;

4. Plaintiff's "admission" that he was able to perform the duties associated with the Customer Service Representative position; and

5. Plaintiff's application for and receipt of unemployment benefits after defendant terminated his employment in April 1991.

From this evidence, it is unreasonable to conclude that defendant was able to perform all the essential duties of his position on either January 31 or April 28, 1989.

First, the findings and conclusions stemming from plaintiff's Workers' Compensation and Social Security Administration hearings are not relevant to plaintiff's ability to perform his job duties when employed by Western Atlas. Nothing in the administrative record indicates that the administrative law judges were aware of plaintiff's job duties, namely the rigorous lifting requirements. While the administrative law judges' findings are relevant to plaintiff's ability to perform less strenuous job duties, they do not support defendant's conclusion that plaintiff was able to perform the duties of rig hand as of January 31 or April 28, 1989.

Second, Dr. Fleske's release allowing plaintiff to return to work without restrictions does not indicate that plaintiff was able to perform all of his job duties. A comprehensive review of Dr. Fleske's medical reports shows that plaintiff consistently complained of ankle pain from the date of this injury through May 17, 1989. Furthermore, the administrative record fails to indicate that Dr. Fleske was aware of the lifting requirements associated with plaintiff's position.

Third, plaintiff did not "admit" that he was able to perform all of the essential duties of his position. Although plaintiff stated that he was able to drive a truck and perform the sedentary duties commonly attributed to the Western Atlas customer service representative position, he repeatedly testified that he could not engage in the manual labor required to fully perform his position.

Finally, plaintiff's application and receipt of unemployment benefits is irrelevant to plaintiff's ability to perform all of his job duties at Western Atlas. The court notes, however, that plaintiff's receipt of unemployment benefits may impact the final insurance benefit award received by plaintiff under the insurance policy. *See infra* Part III.C.

In sum, the administrative record does not support defendant's conclusion that plaintiff was able to perform all of his essential job duties while employed by Western Atlas. Indeed, the administrative record is replete with evidence indicating that plaintiff was unable to meet the rigors of the rig hand position. Although plaintiff's job did not often call for manual labor, it is undisputed that manual labor was an essential duty of plaintiff's position at both the date of his injury and the date of his termination. The court concludes that plaintiff's accident on January 31, 1989 rendered him permanently unable to perform all of the essential duties of his position as it existed on January 31 and April 28, 1989. Therefore, plaintiff is entitled to long-term disability benefits for the period beginning January 31, 1989 and ending January 31, 1991, offset by any "other income" received for that period.

*B. Was plaintiff unable to perform all the essential duties of any occupation for which he was qualified?*

■ Defendant, through its determination that plaintiff was not disabled as of January 31, 1989, concluded that plaintiff was not eligible to receive long-term disability insurance benefits before or after January 31, 1991. As stated above, defendant's determination that plaintiff was not entitled to benefits for the period beginning April 28, 1989 and ending January 31,

1991 was arbitrary and capricious; however, the court concludes that substantial evidence supports defendant's determination that plaintiff was not entitled to benefits after January 31, 1991. The court bases this conclusion on defendant's reliance on plaintiff's medical records, his post-termination employment, and his admissions as to his ability to work. On multiple occasions, plaintiff admitted that, at the time he was terminated, he was capable of driving a truck and performing the duties of a customer service representative. Plaintiff's admissions establish that he was able to perform the essential duties of various occupations for which he was qualified. Furthermore, defendant's denial is supported by plaintiff's medical records and by plaintiff's ability to start and run an oil field hauling business shortly after he was laid off and less than a year after he was injured. Defendant's determination that plaintiff is entitled to benefits after January 31, 1991 is affirmed.

### C. Calculation of Benefits

 Defendant argues that the insurance policy requires that any award of long-term disability benefits must be set off by "other income" earned by plaintiff.[2] Defendant also argues that the case should be remanded to defendant to calculate the proper award. While the court agrees that any award of insurance benefits must be set off by "other income" received by plaintiff, the court will not remand the case. Rather, defendant is ordered to submit additional briefing to the court which calculates the proper benefit award under the terms of the insurance policy. Plaintiff may respond to this motion pursuant the provisions of D.Kan.Rule 7.1.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant Life Insurance Company of North America's determination that plaintiff Rufus Caldwell could perform all of the essential duties of his position was arbitrary and capricious,

and that plaintiff, therefore, is entitled to long-term disability benefits for the period beginning January 31, 1989 and ending January 31, 1991, offset by any "other income" received for that period.

IT IS FURTHER ORDERED that defendant's determination that plaintiff was not entitled to benefits after January 31, 1991 is affirmed.

IT IS FURTHER ORDERED that defendant shall submit additional briefing which calculates the benefit award due plaintiff under terms of the insurance policy within thirty (30) days after the filing of this memorandum and order.

IT IS FURTHER ORDERED that defendant's motion in limine (Doc. 136) is granted.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**

---

**2.** The definition of "other income" is specifically defined by the insurance policy, and will not be reproduced here.